## C. B. HOLLIFIELD v. J. P. LANDRUM ET AL.

### Decided January 14, 1903.

**1.—Sale of Land—Good Title—Parol Evidence.**

Where a contract for the sale of land requires that the title be "good," this does not in all cases require that the record title be absolutely perfect, but parol evidence is sometimes admissible to explain apparent lapses and defects in the title.

**2.—Same—Identity of Names.**

Where a patent issued to Levi H., and the land was subsequently conveyed by O. L. H., parol evidence was admissible to show identity of name.

**3.—Same—Payment of Note.**

So parol evidence is admissible to show that a purchase money note which by the abstract was apparently outstanding has been paid.

**4.—Same—Time—Curing Defects.**

Under a contract which provided that if the title was good the earnest money was to be forfeited unless the vendee took the property within two days after the delivery of the abstract, but if the title was defective two days were allowed the vendor to perfect the same, the vendor was entitled to two days in which to cure designated defects after objections to the title were filed by the vendee.

**5.—Same—Abstract of Title—Definition.**

A charge defining an abstract of title as a statement in substance of what appears on the public records affecting the title, and also a statement in substance of such facts as do not appear upon the public records which are necessary to perfect the title, is substantially correct.

**6.—Same—Title Not Marketable—Adverse Grant.**

For the purpose of showing that the title offered him was not a good and marketable one, defendant had the right to show a prior adverse grant by the government of Coahuila and Texas, although such grant was apparently void, since it would be valid if it could be shown that it had received the approbation of the supreme executive; and the probability of an adverse claim growing out of such grant was proper to be considered in view of the lapse of time since it was made, the absence of claim under it, and adverse possession under plaintiff's claim.

**7.—Same—Certified Copy—Foreign Language.**

Where the certified copy of such grant in the Spanish language was also a correct translation thereof, it was admissible in evidence.

**8.—Same—Burden of Proof.**

Where the action is by the vendor to enforce a forfeiture of the earnest money, the burden is on the defendant to show that his objections to the title not arising on the record, but resting in extraneous facts, are of such a nature as to threaten and diminish the market value of the property.

**9.—Same—Good Faith—No Title When Contract Made.**

Where the contract provided that the title might be made good by the vendor upon objection to it by the vendee, the latter could not refuse compliance with the contract upon the ground merely that the vendor had no title at the time the contract was made, unless it was not made in good faith, and evidence of a prior oral gift of the land to the vendor by his father was admissible to show good faith on his part.

**10.—Same—Waiver—Estoppel—Pleading.**

Where the defendant pleaded fraudulent representations of the vendor, and the latter did not plead waiver or estoppel, defendant can not be held to have waived such defense by having taken other steps in the matter after learning of the fraud.

**11.—Same—Fraudulent Representations Prior to Contract.**

Fraudulent representations as to the character and quantity of the land could be urged by the defendant to defeat the contract, though they were made prior thereto, and were not embodied therein.

Appeal from the District Court of Jefferson. Tried below before Hon. J. D. Martin.

*Hazlewood & Gordon* and *P. A. Dowlen,* for appellant.

*A. D. Lipscomb,* for appellee.

GILL, ASSOCIATE JUSTICE.—This was a suit by the appellees for damages against the appellant, growing out of an alleged breach of contract for the sale of 150 acres of land. The basis of the action was the following instrument styled "earnest receipt":

"$825.                              BEAUMONT, Texas, April 27, 1901.

"Received of C. B. Hollifield the sum of eight hundred and twenty-five ($825) dollars as part payment of the purchase money on the following described property, to wit: 150 acres out of the northwest corner of the L. Hildebrandt survey, lying on the east of G. W. Payne tract, together with all the improvements thereon, which property I have this day sold to C. B. Hollifield, his heirs and assigns, for the full sum of eight thousand two hundred and fifty ($8250) dollars cash. Upon payment of cash part of purchase money ($8250), including the amount herein receipted for, I agree to convey or cause to be conveyed by good and sufficient warranty deed to the above described property. If the title to said property is not good, and can not be made good within two days from the delivery of the abstract, then the $825 herein receipted for shall be returned to the said C. B. Hollifield, his heirs and assigns. But if the title is good and said property is not taken within two days from delivery of the abstract, then the $825 herein receipted for shall be forfeited to Bright & Co., and the vendor equally, as liquidated damages, and this receipt shall be null and void, and all parties herein named released. In the event the title to said property is defective, two days shall be allowed to the vendor to perfect the same, and I bind myself to use my best efforts to perfect the title to said property within that time.

"J. P. LANDRUM,
"By Bright & Co., agents."

On the said 27th of April, the defendant, Hollifield, delivered to the plaintiff, Bright & Co., the following draft:

"$825.                              BEAUMONT, Texas, April 27, 1901.

"Pay to the order of Bright & Co., eight hundred and twenty-five ($825) dollars.

"C. B. HOLLIFIELD.
"To Brooke Smith & Co., Brownwood, Texas."

Beaumont National Bank and Brooke Smith were parties defendant, but the plaintiffs dismissed their case as to them, and proceeded against

Hollifield, seeking to recover the liquidated damages named in said "earnest receipt."

The defendant Hollifield filed a general denial and plea of not guilty, and also set up by special answer that he was induced to enter into said contract by the false and fraudulent representations of the plaintiffs as to the character and location of the land, and also alleged certain defects in the title tendered to him by the plaintiffs, and that said defects were not cured within the time specified in the contract; that time was the essence of the contract; that said "earnest receipt" was deposited with the Beaumont National Bank, together with said draft to be held by it, pending defendant's investigation of the character and location of the land, and pending the examination of the title by defendant's attorney; that, contrary to the agreement, the defendant bank and plaintiffs caused said draft to be sent to Brooke Smith & Co. for collection, after defendant had refused to take said title on account of said misrepresentation, and on account of the plaintiffs failing and refusing to tender a good record title as specified in said earnest receipt, and as promised by the plaintiffs. And he asked judgment against said bank and the plaintiffs for damages on account of injury to his credit in having said draft presented for collection, and its payment protested.

A trial resulted in verdict and judgment for the plaintiffs for the amount of the draft. From this judgment C. B. Hollifield has appealed.

At a former day of this term we affirmed the judgment without written opinion. Upon a thorough reconsideration of the case on motion for rehearing, we have concluded the judgment should be reversed, and the cause remanded for errors committed at the trial, and this renders it necessary for us to dispose of such assignments as present questions likely to arise upon another trial.

On the 27th of April, 1901, the instrument above set out and styled for convenience "earnest receipt," was executed by Bright & Co. as agents of J. P. Landrum. Thereupon, on the same day, appellant executed and delivered to them the draft for $825 in pursuance of the agreement. At that time Hollifield had never seen the land, and did not know either its character or location. He and another witness testified: That appellant stated he wished to purchase high prairie land, free of timber and marshes, and with mounds thereon, which were supposed to indicate the presence of oil or gas. That Bright & Co. represented the land to be of that character, with 30 or 40 acres in a good state of cultivation and that the tract was situated within two miles of a railroad station called Landrum. That upon these representations he was induced to enter into the contract of purchase, and, believing them to be true, executed and delivered the draft, and assented to the terms of purchase. That it was understood and agreed in connection with these representations that if the land was not found to be as represented, the contract of sale should be annulled. Thereafter on the same day appellant with said witness went out to see the land, and

learned that it was about five miles from Landrum station; and they both testify that it was not prairie land but timbered; that it had sloughs and marshes upon it, and had but a few acres in cultivation; and that in no respect was it as represented. That upon his return on the same day he advised both Landrum and his agents of his discoveries, and told them he would not accept the land, and upon their insistence, referred them to his attorney.

Appellees prepared an abstract of title to the land and on the 29th of April delivered it to P. A. Dowlen, appellant's attorney, for inspection. On May 1st, Dowlen returned the abstract to appellees' attorneys, noting such defects as he considered material.

The abstract showed: First. Patent from the State of Texas to Levi Hildebrant to 320 acres, which included the land in question of date May 7, 1852. Second. Deed from O. L. Hildebrandt to A. J. Ward, of date March 8, 1864. Third. Deed from A. J. Ward to G. Landrum, dated June 1, 1866, reciting cash consideration of $320, and note for $300, with no express retention of the vendor's lien.

To this appellant's attorney interposed five objections as follows: First. No conveyance appears in the abstract to show title in O. L. Hildebrandt. Second. In Ward's deed to Landrum the acknowledgment is defective. Third. Part of the consideration was secured by vendor's lien note, and no release appears. Fourth. The certificate of acknowledgment of Gabriel Landrum, as shown on the fourth page, is defective. Fifth. There is nothing to show title in J. P. Landrum.

These objections were handed appellees on May 1st. The first was sought to be cured by affidavits showing that Levi Hildebrandt and O. L. Hildebrandt were one and the same person. The second objection was shown to be untenable. The third objection was without merit, as the note for the purchase money had been due for about twenty-five years, and it was shown by G. Landrum that it had been discharged. The certificate mentioned in the fourth objection does not affect any of the land in controversy. The fifth objection that the abstract showed no conveyance from G. Landrum to J. P. Landrum was valid, but within two days from the time the objections were made Landrum procured a deed from his father, G. Landrum, and had same duly recorded and tendered a deed to appellant. There is evidence to the effect that appellant declined to complete the purchase, both on account of the state of the title and because of the alleged misrepresentations set out above.

J. P. Landrum claimed and offered to prove that the land was a parol gift from his father, G. Landrum, to him prior to the date of the contract of sale, but this evidence was excluded on objection of appellant. It was shown by the testimony of G. Landrum that he had lived upon the land holding it as his own and adversely to the claims of others since 1866,—the date of his deed from Ward,—with the exception of the two years next preceding the trial, and that his title had never been disputed. This witness also stated that the land was woodland with a

prairie marsh and one or two sloughs on it. He also testified to the payment of the Ward purchase money note. It was shown, without dispute, that Levi or O. L. Hildebrandt lived upon the land as his home prior to the sale to Ward; that his wife died in 1861; that when she died he moved to west Texas; that by his deceased wife he had two children, who were married prior to the death of his wife, and who now live in west Texas. The record does not disclose whether these children were male or female, but we presume if they had been under coverture the fact would have been shown.

We shall not discuss each assignment in its order, but, for the sake of convenience and brevity, dispose of such questions as are presented by the brief considered as a whole. Appellant contends that the earnest receipt, properly construed, binds the vendor to give him a good record title; that he could be compelled to accept no other; and that therefore the court erred in admitting parol evidence to show that Levi Hildebrandt, the patentee, and O. L. Hildebrandt, the vendor, were one and the same person. Under the assignment presenting this question, he asserts the proposition that he had the right to demand a title evidenced entirely by the record, and that parol proof could in no event be resorted to for the purpose of explaining or supplying apparent lapses or defects. The proposition is not without support in the authorities, but the better rule seems to be that such proof is, under certain circumstances, admissible. It is said that this must necessarily be true, else many titles of the most conclusive and satisfactory nature would be held unmarketable or not "good." In this view of the question, title by descent or inheritance may be shown by parol, and, if the proof is clear and conclusive, the purchaser will be compelled to accept. Maupin, Marketable Title, pp. 175, 181. The same rule has been applied to title by limitation, but in such case, also, the facts establishing the right must be shown beyond a reasonable doubt, and it must also appear with reasonable certainty that there is no present probability that a right adverse to such title will be asserted at a time when the purchasers will not have the proof to successfully meet it. Maupin, pp. 175-182.

Many authorities assert an apparently contrary doctrine,—notably the courts of California, Virginia, Illinois and Kentucky; but we apprehend the confusion and conflict among the decisions upon the point grow rather out of the form of the contract adjudicated in each case, and out of the fact that each case must be determined upon its own peculiar circumstances. While our laws require that every conveyance of real estate shall be in writing, and provide a means of recording such evidences of title, yet, as a matter of fact, a part of every such transaction rests in parol. Thus, however perfect the deed of conveyance may be, delivery is necessary to its validity, and, if questioned, must be determined by parol evidence. So, also, as to the identity of the person executing it. Where the names are the same or very similar, identity is presumed until the contrary is shown. It is also true that many titles are good

and free from doubt which rest in part on inheritance or limitation, for the evidence of which in neither case has the law provided a means of registration. Another instance is the case of the wife's interest in the community real estate where the deed was taken in the name of the husband. All these instances come within the reason of the rule laid down in Maupin on Marketable Title, supra, to the effect that such matters may be shown by parol; that if so shown the failure of the record to disclose them furnishes no sufficient excuse for rescission by the purchaser·if the facts are made to appear with such certainty as to satisfy a reasonable prudent person that the title is good. The doctrine seems to find ample support in the authorities cited by the author.

We have thus disposed of the contention that, under a contract of this nature, parol evidence is generally inadmissible to supplement the record. We recur now to the exact question made by the first assignment, namely, that parol proof was inadmissible to show that O. L. and Levi Hildebrandt were one and the same person.

In Robertson v. Dubose, 76 Texas, 6, it is said: "Similarity of names is ordinarily a sufficient evidence of the identity of a purchaser in a chain of conveyances, and, in the absence of evidence casting a doubt upon the identity of a party to a conveyance of land, it ought to be held sufficient in every case;" citing Chamblee v. Tarbox, 27 Texas, 144. In the latter case there was a conveyance to Jane Carroll, and a subsequent conveyance from Jane M. Tarbox and her husband, —— Tarbox. This, with the recitals in the deed, was held sufficient proof of the identity of Jane Carroll with Jane M. Tarbox, in the absence of opposing proof. In the case before us it might well be presumed, in the absence of opposing proof, that O. L. Hildebrandt received the conveyance in his Christian name, and conveyed it signing with his initials. It was certainly not error to admit evidence which establishes the fact beyond controversy. In this connection, it is well to dispose of appellant's contention that the contract, properly construed, entitled him to demand a good record title. The stipulation was for a good title, or one which could be made good within a stipulated time. Under the contract we think the purchaser was entitled to demand a good and marketable title, and that such a title should be shown by the abstract, but no fair construction of the contract would require a title evidenced entirely by the record. He was entitled to more than a good title, for a title, though in fact perfectly good, might be so threatened with adverse claims of probable merit as to render it altogether unmarketable. Except for the question made as to the identity of O. L. and Levi Hildebrandt, and the outstanding purchase money note, the abstract was fair upon its face. These defects were both sought to be cured by amendment within the prescribed time, and upon those points it was proper for the trial court to hear proof in determining whether the title tendered was good and marketable; that is to say, reasonably free from doubt, and such a one as a reasonably prudent man, with all the facts before him, would accept. In determining this question it is not enough that the objections raise a remote

suspicion against the title. The objections must be grave and reasonable, for few titles can be established with mathematical certainty.

In this connection we will dispose of an objection to the construction placed by the trial court upon the contract in question. It is urged that as the defects in the title, as disclosed by the abstract, were not cured until more than two days after its delivery to appellant, the appellees were too late, and the trial court erred in allowing them two days from the filing of objections. While it is true the contract gave appellant two days from the time of delivery of the abstract in which to comply with the terms of purchase, it is also true that it was not stipulated that appellees had only two days from that date in which to cure designated defects. We think the trial court correctly held that two days were allowed after filing objections. Any other construction would allow the purchaser to defeat the transaction by delaying the full two days before filing objections. The vendor was bound to meet only such objections as the vendee urged, and, of course, could not meet them until their nature was disclosed.

The following portion of the court's charge is assigned as error:

"By an abstract is meant a statement, in substance, of what appears on the public records affecting the title; and also a statement, in substance, of such facts as do not appear upon the public records which are necessary to perfect the title." In the American and English Encyclopedia of Law, vol. 1, p. 210, second edition, an abstract is thus defined: "An abstract of title   *   *   *   is a short and methodical summary of the documents and facts which affect the title to a piece of land." This definition accords also with the views of Mr. Maupin, as expressed in his work on Marketable Titles, p. 159, sec. 71. We regard the definition given by the court as substantially correct, though not a full and comprehensive definition. No material error was committed in the respect complained of.

In addition to the objections urged to the abstract when delivered, and which were sought to be cured or explained, the appellant pleaded in this cause that the title was unmarketable because covered by a prior eleven league grant made by the government of Coahuila and Texas to one Buenaventia Reyes. A certified copy of this grant was offered in evidence by appellant, and was excluded on objection of appellees. The objections urged were: First, the grant lay within the littoral leagues and was forbidden to be so located without the consent of the supreme executive of the Mexican Union; second, because it was a grant of more land than was authorized to be given to one under the colonization contracts of Lorenza De Zavala, and is therefore void; third, because it is a record in a foreign language, not authorized to be introduced in evidence under the registration laws of Texas. It was conceded that the copy was a correct translation of the grant. It seems to us the admissibility of the instrument offered did not depend on its validity. It was a valid grant, if it could be shown that it had received the approbation

of the supreme executive of the Mexican Union, and should have been admitted in evidence for what it was worth, that the probability of an adverse claim growing out of it might be considered and determined in view of the long lapse of time, absence of assertion of claim thereunder, adverse possession of Landrum, etc.

The objection that Hildebrandt sold the land in 1864, his wife having died in 1861, and that it being community property he could convey only an undivided half interest, was not made either against the abstract or by pleadings on the trial. The facts presenting the issue seem to have been developed incidentally. If the issue is made upon another trial, the fact not having been disclosed by the abstract, it may be considered with reference to its effect upon the title as marketable or good, under the views herein expressed as to other like objections; it being borne in mind, that, as to objections not arising on the record, but resting in extraneous facts, the burden is on appellant to show that the facts are of such a nature as to threaten and diminish the market value of the property. Maupin, p. 582.

Appellant also interposed objection on the trial that he ought not to be cast in the suit, because at the date of the contract of sale the vendor had no title, and no power either in equity or at law to procure one. As a matter of fact he had no written conveyance from his father, and did not procure one until the objection was made to the abstract as first furnished. Ordinarily the rule contended for by plaintiff would be applicable in a case where the vendor seeks to enforce the contract of sale, having no title in himself at the date of the contract. But it seems to us there are two reasons why the rule should not be applied in the case before us. The vendor did not warrant the title in himself, but bound himself to convey, or cause to be conveyed, a good title, which he claims he could have done, and did do, before the expiration of the time allowed therefor. It is also true that if a vendor believe in good faith that he has the title or a valid claim thereto, and, within the time agreed on, perfects same, the purchaser will not be permitted to refuse to complete the transaction. Sugden on Vendors, p. 331. The contract itself provides that the title may be made good upon objections. Upon this issue evidence of an oral gift from the father to J. P. Landrum of the land in question to establish his bona fide belief in his claim of right was admissible.

Upon the issue of fraudulent representations as to the character and quantity of the land the court charged that if they were made, and appellant, relying on them, entered into the contract, appellees could not recover, but if, after ascertaining the facts, he employed a lawyer and proceeded with the transaction, he should be held to have waived the deception, and could not depend upon that ground. The testimony presents the issue of fraudulent representations inducing the execution of the contract, and the fact that they were made prior to the contract and not embodied in it will not preclude appellant from urging the defense. The facts upon the points were fully pleaded by appellant, but

were not responded to by appellee. No waiver or estoppel was pleaded, and it is well settled that one relying on proof of waiver of an alleged or admitted right must allege and prove it. Scarbrough v. Alcorn, 74 Texas, 651, 12 S. W. Rep., 72; Produce Co. v. Turner, 27 S. W. Rep., 583; Howard v. Metcalf, 26 S. W. Rep., 449; Rail v. Bank, 22 S. W. Rep., 865. The objection to the charge in this respect is well taken.

We do not deem it necessary to notice any of the remaining assignments. None of them present error likely to arise upon another trial.

For the errors indicated the motion for rehearing is granted, the judgment reversed and the cause remanded.

*Rehearing granted; reversed and remanded.*