Argued April 3, decided April 30, rehearing denied May 28, 1912.

## JAEGER v. HARR.

[123 Pac. 61: 123 Pac. 901.]

VENDOR AND PURCHASER—ABSTRACT—NATURE AND EFFECT.

1. An abstract of title is not proof of title in the vendor, but is only a synopsis or epitome of the deed and records which show the vendor's title; and the purchaser is not bound to accept the title, even if the abstract shows it to be complete, unless, upon verification, it proves perfect.

VENDOR AND PURCHASER—ABSTRACT—SUFFICIENCY.

2. The vendor of land agreed to furnish an abstract of title showing property to be free of all incumbrances. The abstract did not contain sufficient recitals to enable the purchaser to locate the land; but it referred to deeds and instruments which showed the location of the land. Held that, as an abstract of title need only furnish a synopsis of the data which, when verified, will establish the title, the abstract in this instance was sufficient.

VENDOR AND PURCHASER—TITLE OF VENDOR—ABSTRACT OF TITLE—
    DESCRIPTION—SUFFICIENCY.

3. As a plat cannot in the very nature of things be accurate, it is no objection to an abstract of title that one of the instruments refers to a plat which does not exactly coincide with the grant which was platted.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by J. P. Jaeger against Adolph W. Harr to recover $300, the amount of a partial payment made by plaintiff to defendant on the purchase of lot 17, in block 277, of Couch's addition to the city of

Portland, Oregon. The contract of purchase contains a clause that defendant agrees to furnish to plaintiff "an abstract of title, prepared by a reputable abstract company of the city of Portland, showing said property to be free and clear of all clouds and incumbrances," in default of which the amount paid shall be returned, and the agreement be null and void. The abstract furnished was not satisfactory to plaintiff. It is alleged that the map does not show an initial point, or other mark or designation, whereby the location of the Couch addition, can be determined; that there is no survey of the ground.

Prior to the execution and record of the map and plat, Couch conveyed to Amos N. King, on December 21, 1869, a certain portion of the Couch donation land claim, described as follows:

"Beginning at the southwest corner of Couch's donation claim; thence in a northwesterly direction along the line between Couch's and King's claims, as fixed by Thompson's survey, 40 chains to a stake; thence east 8.21 chains to a stake; thence in a southeasterly direction parallel to said line between Couch and King to the south line of Couch's donation claim 40.26 chains to a stake; thence west along said south line of Couch's claim 8.21 chains to the place of beginning, containing in all 30 acres."

It is contended that the abstract does not show the location of the southwest corner of the Couch donation claim, as fixed by Thompson's survey, mentioned in the deed, or the location or direction of the line between Couch's and King's claims, as determined by Thompson's survey, or what portion of the Couch donation claim is conveyed by the deed to King. It is further alleged that a portion of the ground, described by metes and bounds, included in the Couch addition and embracing lot 17, was conveyed to defendant's grantors, the description of the west line of which is:

"Thence (from the northwest corner of block 276 of Couch's addition) by a line at right angles with said

northern boundary (southerly) for the distance of 180 feet, more or less, to the compromise line of Amos N. King; thence by said compromise line in a somewhat southeasterly direction for the distance of 302 feet more or less to a point where said line would intersect the north line of C street aforesaid, if the same were extended westward."

The deed of the platting and dedication of this tract and other ground as blocks 276, 277, and 278 described the west boundary line of such platted ground as:

"Thence westerly along said north line of Washington street 100.26 feet to the southeast corner of a tract of land heretofore owned by one F. R. Strong; thence north on a line parallel with the west line of North Nineteenth street 100 feet to the northeast corner of said F. R. Strong tract; thence westerly on a line parallel with said north line of Washington street 43.7 feet to the southeast corner of a tract of land conveyed to A. M. Elkins by deed recorded in volume 169 of the Records of Deeds of Multnomah County at page 296; thence northwesterly along the east boundary line of said Elkins tract and along the east boundary line of a tract of land (conveyed by McKenzie to Douglas by deed recorded in volume 253, p. 66) 84.85 feet to the southeast corner of a tract of land heretofore conveyed (by Bishop Morris to Tanner); thence along the east line of said Tanner tract 56.95 feet. * *"

The east line of the tracts referred to in the last descripton, namely, the Elkins, Douglas, and Tanner tracts, in their respective deeds, is described as "the Couch and King compromise line." The Strong deed refers to it as:

"The division line, generally known as the compromise line, between the donation land claims of John H. Couch and wife and Amos N. King and wife."

It is alleged that there is nothing in the abstract to show the location or direction of the compromise line, dividing the King and Couch donation claims, or of the Couch and King compromise line; and that plaintiff

notifed defendant of these defects and refused to accept the abstract. He brings this suit to recover $300, the amount paid on the contract. The case was tried by the court, without intervention of the jury. Findings were made, and judgment rendered in favor of defendant. Plaintiff appeals.                        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Farrington & Farrington* and *Mr. C. M. White,* with an oral argument by *Mr. White.*

For respondent there was a brief over the names of *Messrs. Beach & Simon,* and *Mr. Chester G. Murphy,* with an oral argument by *Mr. Murphy.*

Opinion by MR. CHIEF JUSTICE EAKIN.

The map of the Couch addition contains no survey of the ground, nor designation of any initial point, nor discloses its location with reference to any known corner or public monument. Adjacent to the southeast corner of the plat is an uneven line, marked "Willamette River," and the map is designated as "Couch Addition to the city of Portland." There is no other indication upon its face showing where it is located, when it was made, where it was recorded, or who was the owner of the ground. Evidently, at the time the map was made, John H. Couch executed an instrument, specifying the size of the streets and blocks, but made no dedication and gave no description, which instrument was duly acknowledged and filed for record on January 25, 1865. On November 15, 1872, the widow and heirs of J. H. Couch executed and acknowledged, and the next day filed for record, a deed establishing "this map" as the plat of Couch's addition to the city of Portland, and reciting that the lands referred to therein are upon the donation land claim of John H. Couch, deceased, and dedicating the streets and alleys to public use, which was evidently attached to the map first referred to. Thus it

would seem that the description of the ground platted is not given, nor any initial point named, in the deed of dedication, nor that it is located with reference to any known corner or monument. Therefore, without evidence *aliunde,* it was insufficient to identify property included therein. However, we have the patent from the United States to John H. Couch of the donation land claim, described by metes and bounds, the initial point of which is described with reference to a government section corner, and the plat is described in the deed of dedication as being upon and a part of the donation claim. The abstract, therefore, shows that the title from Couch to defendant is perfect. There is no question as to the location of the lot on the ground; that is readily determined by the streets.

Plaintiff does not allege, and we understand does not contend, that there is an adverse claim to any part of lot 17, or doubt as to its west boundary as described in the plat, but questions the sufficiency of the abstract, because it does not describe the platted ground, nor locate the initial corner with reference to some monument. The data given in the abstract is sufficient to enable one readily to locate definitely the plat with reference to the boundaries of the donation land claim; and that is all that the plat could do, if the initial point and boundaries were properly given thereon, or in the deed of dedication. Evidently the west boundary of the plat from block 312 of Couch's addition south to block 304, and thence, as indicated by the dotted line, southeast, is a part of the first course, and the whole of the second course of the descriptions in the patent, namely, the course from the angle on the west line of block 315, is south 24 degrees east, and the distance is 61 chains to the southwest corner of the donation claim. The description of the part of the claim quitclaimed by Couch and wife to King, on December 21, 1869, will be found to

bound the tract between the dotted line on the west boundary of the Couch donation claim and the west line of the plat between block 301 and the south line of block 278. The deed of dedication of the plat and subdivision of blocks 276, 277, and 278 describes part of the west line of the platted ground in those blocks as being the east boundary line of the Elkins and the Douglas tracts, which is referred to in the deeds to those tracts as the compromise line of Amos N. King.

All of these deeds and descriptions evidently refer to the same line, which is identified and made plain by the quitclaim deed from Couch to King, the boundaries of which land are given above. If, in connection with the second course of the description in the patent, namely, south 24 degrees east, which is the line between the King and Couch claims, we take the description in the quitclaim deed referred to, it gives us the course of the east line of the tract described in the quitclaim deed, and clearly is the line referred to in all of these descriptions, and the west line of the tract subdivided by deed of September 9, 1905. This conclusion is emphasized by the fact that the abstract shows no other conveyance by Couch from the west portion of the donation land claim; and therefore no other line could be referred to. Although this data does not all appear on the map, or in the deed of dedication, its absence does not cast a cloud upon the title to lot 17; it being made certain by the other instruments disclosed by the abstract.

1. An abstract is not proof of title in the vendor. It is only intended as a synopsis or epitome of the deeds, records, and other data that will exhibit the condition of the title. Purchasers are not bound to accept the title, even if the abstract shows it to be complete, unless upon verification, it proves to be a good title. And in this case no question is raised as to the sufficiency of

defendant's title, only whether the abstract is such a one as plaintiff contracted to furnish. If it contains such data as, when verified, will establish a good title, then it is a complete abstract.

2. Much controversy has arisen as to what is meant by a good and sufficient or merchantable abstract of title. Warvelle, Vendors, in discussing this question, concedes that it is not possible to find a complete chain of title upon the public records in every case. In addition to what may be acquired from the public records, further information may also be necessary and should be furnished by the vendor from other sources than the public records. In cases of descent, where there has been no administration or probate record, additional information of heirship or descent may be supplied by affidavits or other means. Also in regard to marriages, of which no record is ordinarily kept,

"Yet, even where such registers are kept, the information they furnish must often be supplemented by evidence *aliunde,* in order to show identity of person. This evidence usually takes the form of an affidavit, reciting the facts. Such affidavits being only *ex parte* statements and because not being made under the sanction of a court, or in any legal proceeding, are not strictly evidence for any purpose, yet, being usually all that can be adduced, they are resorted to by counsel under a choice of difficulties, and have been, as it were, by common consent of the profession, adopted as competent proof in the examination of titles and the testimony taken as corroborative evidence of general reputation, etc. Again, such affidavits, though inadmissible under the rules of evidence, are valuable for the reason that they show that living persons can at the time establish the facts thereto recited." Page 356.

In an English case, *Parr* v. *Lovegrove,* 4 Drew. 176, upon this subject, it is said: "The first inquiry, whether a good title can be made, means, not only that the vendor shows on his abstract such documents and facts that

if the documents are produced and the facts proved he has a good title, but that the vendor has shown that he can produce the documents and prove the facts; but, as to the second branch of the inquiry, it means, When was a good title first shown on the abstract? And if, on the face of the abstract or abstracts delivered, the vendor has shown, say a 60 years' title, and if, for the purpose of supporting that title, it is necessary to show that such a person died intestate or any other fact, if the facts are alleged with sufficient specification on the abstract, then the abstract shows a good title, although the proof of the matters shown may be the subject of ulterior investigation; and no authority has been cited to show that that is not the meaning of the decree."

And Maupin, Marketable Title to Real Estate, page 170, says:

"Thus a deed executed by a married woman is, in most jurisdictions, void, unless her husband joins as a party; but the fact that a grantor in a deed in the vendor's chain of title was a married woman would not ordinarily appear, except upon inquires made among those likely to know the fact. So it is possible for a title to be good, though evidenced altogether by matter *in pais,* such for example, as a title by inheritance, or by adverse possession for a great number of years."

And in *Heinsen* v. *Lamb;* 117 Ill. 549, 556, (7 N. E. 75, 79), the court says: "We understand an abstract, is a legal sense, to be a summary or an epitome of the facts relied on as evidence of title.* * But an abstract, properly so called, must contain a note of all conveyances, transfers, or other facts relied on as evidences of the claimant's title, together with all such facts, appearing of record, as may impair it. * * An abstract is not admissible in any case, nor is any part of it, to prove such facts as the party is prepared to prove by a higher grade of evidence." See, also, *Hollifield* v. *Landrum,* 31 Tex. Civ. App. 187, 191 (71 S. W. 979.)

Although there is not an effort made by the defendant to complete his abstract by affidavit or other proof, yet plaintiff contends that the abstract must show that all the evidence of title appears of record. These authorities are cited to show that it is only necessary for the abstract to furnish a synopsis of the data which, when verified will establish the title; and we think the abstract in this case sufficiently identifies the property, and from which the dimensions of lot 17, both course and distance, can be determined from the data disclosed therein; and therefore defendant was entitled to retain the $300.

The judgment is affirmed.                    AFFIRMED.

Decided May 28, 1912.

ON PETITION FOR REHEARING.

[123 Pac. 901.]

Opinion by MR. CHIEF JUSTICE EAKIN.

3. On petition for rehearing it is contended that the opinion avoids any reference to the term "as fixed by the Thompson survey," contained in the deed from Couch to King, establishing the west line of the tract conveyed, which it is contended does not identify the line intended. So far as appears, the term quoted adds nothing to the description, it being complete without it, namely "Beginning at the southwest corner of the Couch donation claim, thence in a northwesterly direction along the line between the Couch and King claims as fixed by the Thompson survey," etc. The patent describes the claim by metes and bounds, giving the course and distance, the survey of the claim, and that survey may have been made by a United States deputy surveyor by the name of Thompson, and the designation of the southwest corner of the Couch claim in the deed from Couch to King indi-

cates the southwest corner as determined by that survey, and the northwest line between the Couch and King claims indicates that the line is common to both claims, and evidently is the line intended. After the execution of the deed from Couch to King, the east line of the tract conveyed constituted the line between Couch and King, or, if not, then the abstract is incomplete.

There are nine instruments mentioned in the abstract which refer to the Couch and King "compromise line" as part of the description therein, which, taken in connection with the deed from Couch to King and the Couch map, which shows the relative location of the various tracts described, makes plain that the compromise line is the east line of the tract conveyed by Couch to King. This does not constitute the abstract evidence of the title, but if, when questioned, these instruments are produced, and they disclose what the abstract presents, it will constitute a marketable title.

Defendant attempts to demonstrate by scaling the Couch map that it does not exactly fit the description in the patent, showing slight variations in every line and angle, but the case he cites—*Twogood* v. *Hoyt*, 42 Mich. 612 (4 N. W. 446)—shows the unreliability of that method of testing the plat. The court says: "Parties would hold their lands in cities and villages by a very uncertain tenure if the proper location thereof was dependent upon such evidence." A plat cannot in the very nature of things be accurate, but defendant's scale of the Couch map does make it approximately conform to the description in the patent. This statement applies equally to the description of the Douglas and Elkins tracts, where it is claimed the scale is less than the dimensions of the lot conveyed. Also in the Elkins deed the description is "more or less to the compromise line dividing the King and Couch donation land claim." The

Douglas deed is also limited by that line so that neither can encroach upon lot 17, in block 277.

It is suggested that the statement in the opinion, that it is only necessary for the abstract to furnish a synopsis of the data, which, when verified, will establish the title, conflicts with the case of *Kane* v. *Rippey*, 22 Or. 296 (23 Pac. 180); *Kane* v. *Rippey* 22 Or. 299 (29 Pac. 1005); *Kane* v. *Rippey*, 24 Or. 339 (33 Pac. 936) and *Lockhart* v. *Ferrey*, 59 Or. 179 (115 Pac 431). But in the former case the criticism of the abstract was that it showed a defective title, defective deeds, and an uncanceled mortgage, and in the latter case there was missing a deed in the chain of title; therefore they are not parallel cases.

The petition is denied.

AFFIRMED: REHEARING DENIED.