ARMSTRONG v. PALMER et al.  (No. 1569.)

(Court of Civil Appeals of Texas.  Amarillo.
Jan. 21, 1920.  On Motion for Rehearing,
Feb. 25, 1920.)

1. PRINCIPAL AND AGENT ☞145(3)—ACCEPTANCE OF CONTRACT OF PURCHASE IN HIS OWN NAME BY PART OWNER AFTER PROCURING AUTHORITY FROM OTHER OWNERS IS BINDING ON THEM.

Where real estate agent employed by the owner of a quarter of a section made executory contract subject to approval of such owner for sale of the whole section, and such owner, before communicating his acceptance, procured authority from owners of the other three-quarters to go ahead with the contract, the contract was made under authority of owners of the three quarter sections and was binding upon them after acceptance by the first owner in his own name alone.

2. FRAUDS, STATUTE OF ☞116(5)—AUTHORITY TO MAKE EXECUTORY CONTRACT FOR SALE OF REALTY MAY BE ORAL.

Authority to make an executory contract for the sale of real estate need not be in writing.

3. VENDOR AND PURCHASER ☞44—VENDOR ACCEPTING ON JUNE 1ST ACCEPTED CONTRACT "BY" JUNE 1ST.

Jury finding that contract made by plaintiff vendor's real estate agent with defendant purchaser was unconditionally accepted by plaintiff, and that defendant, purchaser was notified thereof by June 1st, was warranted by evidence of acceptance on June 1st; "by" meaning on or before (citing Words and Phrases, First and Second Series, By).

4. APPEAL AND ERROR ☞1073(3)—ERROR IN ENTERING JUDGMENT IN FAVOR OF AGENT FOR PART RECOVERY HARMLESS.

Where vendor and his agent joined in suit to recover sum agreed as liquidated damages for purchaser's breach, and it was pleaded, though not proven, that vendor assigned a part of cause of action to the agent defendant could not be harmed by error in entering judgment in favor of the agent for part of recovery, since the pleading of an assignment of part of the cause of action would be sufficient to bind vendor in the judgment rendered.

On Motion for Rehearing.

5. VENDOR AND PURCHASER ☞151—RIGHT TO VENDOR'S PERSONAL WARRANTY.

A contract obligating vendor to furnish abstract and deed and to show good and merchantable title *held* a personal one, entitling the purchaser to a warranty of the title from the vendor, who, as part owner of the land, could have fulfilled his contract either by taking deeds from the other owners of the land to himself and executing his own deed to the purchaser, or perhaps by securing deed to the purchaser from the other owners for the parts of the land owned by them and executing his own warranty of the title to all the land. .

6. VENDOR AND PURCHASER ☞148—PURCHASER'S REPUDIATION MADE TENDER OF DEEDS UNNECESSARY.

Purchaser's repudiation of contract before time for delivery of deeds made formal tender of deeds by vendor unnecessary.

7. VENDOR AND PURCHASER ☞144(1) — LIABILITY OF PURCHASER WHERE VENDOR DOES NOT HAVE TITLE AT TIME OF CONTRACTING.

The liability of the vendee on a contract with a vendor who does not have the title himself, but who at the proper time is ready to make the title contracted for, depends on the answer to the query as to whether the vendor is a bona fide contractor.

Appeal from District Court, Swisher County; R. C. Joiner, Judge.

Suit by R. S. Palmer and another against H. W. Armstrong and another. Judgment for plaintiffs, and defendant named appeals. Affirmed.

W. F. Hendrix, of El Paso, and Williams & Martin, of Plainview, for appellant.
Culton & Taylor and Dennis Zimmermann, all of Tulia, for appellees.

BOYCE, J.  This suit was brought by R. S. Palmer and E. Brooks against H. W. Armstrong and the First National Bank of Tulia

to recover the sum of $1,000, agreed liquidated damages for the breach of a contract between Palmer and Armstrong for the sale of a section of land by Palmer and purchase thereof by the said Armstrong. Trial before a jury resulted in a judgment for the plaintiffs.

E. Brooks, a real estate agent at Tulia, was employed by the plaintiff Palmer to sell the section of land for a stated sum of money, which was to be paid partly in cash, partly in the assumption of certain notes outstanding, and constituting a lien on the land, and partly by the execution by the purchaser of two notes for equal amounts for the balance of the consideration to be made payable January 1, 1919, and January 1, 1920. On May 24, 1918, Armstrong and Brooks executed a contract which was signed by Palmer, by E. Brooks agent, by the terms of which said Palmer agreed to sell and the said Armstrong agreed to buy said section of land. The contract provided for payment of the consideration in accordance with the terms of the enlistment, except that it was provided that three notes should be executed by Armstrong instead of two, and that these notes were to become due June 1, 1919, 1920, and 1921, respectively. This contract contains the following provisions that are material to the consideration of the assignments presented: (1) That the interest on the notes, payment of which was to be assumed by Armstrong, should be paid by Palmer "to date of deed"; (2) that the said Palmer should "furnish abstract and deed within 30 days from date, * * * it being understood that, should there be any defects in said title, party of the first part (Palmer) shall have 60 days further time to perfect same so as to show good and merchantable title; (3) that the sum of $1,000 was placed in the First National Bank of Tulia by Armstrong to apply on first payment and to be paid as liquidated damages in case of breach of the contract by Armstrong; (4) that the existing lease on the land should be canceled on the signing of the contract and immediate possession be given to the purchaser. At the time this contract was drawn and signed by Armstrong and Brooks it was agreed that the contract was made subject to the approval of Palmer by June 1, 1918, and the said H. W. Armstrong so notified. The contract was written by T. W. Tomlinson, of the First National Bank of Tulia, who on the same day, wrote a letter at the instigation of Brooks, whose name was signed to it, R. S. Palmer, who lived out of Swisher county. This letter inclosed the contract and stated that the contract was in accordance with Palmer's enlistment, except as to the payments and explained why this change was necessary. This letter contains the following language in reference to execution of the deed, etc.:

"This deed is to be dated June 1, 1918. * * * 'This deal depends entirely on the possession after June 1st, as party does not want the land unless immediate possession is given. * * * I suggest that you send me the abstract at once and have the deed prepared so as to execute it on the 1st day of June, and mail to the bank immediately after execution, and I think that we will be able to close up without delay."

On May 31st Palmer wired Brooks as follows:

"Will accept three payments and expect him to pay interest on Mr. Austin's note from June 1st on. If it is a trade let us know."

Austin was the payee of the notes, payment of which was to be assumed by Armstrong. On June 1st Palmer wired Brooks again as follows:

"Have mailed contract and abstract to bank. Answer quick."

Palmer signed the contract on the back under advice of some one that this was the proper way to express his approval thereof, and mailed it and the abstract to the bank at Tulia. The envelope in which they were mailed seems to have been before the jury, and it appears from the testimony that the postmark thereon is June, but the day of the month was not legible. It does not appear just when this letter was received by the bank. There is considerable confusion and conflict in the testimony as to whether Armstrong was notified by Brooks of Palmer's acceptance of the contract on or before June 1st. We need not set this testimony out at length. Taking it all together, we think there is sufficient evidence to warrant the finding of the jury that Armstrong was notified by Brooks by June 1, 1918, that the contract had been approved by Palmer. The particular testimony on which this finding of the jury was based was doubtless the testimony of Brooks that a few days after the signing of the contract—four or five or six he thought—he met Armstrong on the streets of Tulia and told him that "it was a trade," at which time Armstrong informed him that he was not going to take the land as it was too dry. About June 1st, or a few days thereafter, Armstrong was quarantined at home on account of smallpox. On June 15th Brooks wrote him this letter:

"I am writing you a letter as I heard you were quarantined on account of your family having the smallpox. The contract and papers are here in the First National Bank, which are signed by Palmer. He accepted all of your offers of the three payments and the $3,200 down. He will give possession as soon as the deal is closed. They have been here ever since you were here. They will stay here until you come in, so come in as quick as you can and fix the matter up."

R. S. Palmer owned only one-quarter of the section of the land. His son and two

sons-in-law each owned a quarter section thereof. The correspondence with Brooks in regard to the sale of the land had been had with R. S. Palmer alone, and no mention made of ownership of parts of the section by others. It does not appear what, if any, authority Palmer had to act for the others prior to May 24th but the evidence is sufficient to warrant the conclusion that on receipt of the letter from Brooks of May 24th inclosing the contract Palmer took up the matter with his son and two sons-in-law, and that before he finally wired Brooks approving the contract he had been authorized by his said son and sons-in-law to go ahead with the sale in accordance with the contract.

[1] The first assignment, that the court erred in refusing to give a peremptory instruction for defendant, is based on two propositions: (1) That the contract was not binding on the son and sons-in-law, owners of three-fourths of the land, because it was not made with their authority, and, as it did not purport to be executed in their behalf, they could not ratify it; (2) that, as the contract was not binding on such parties, it is not mutual, and will not support an action either for specific performance or damages. There is authority to the effect that there can be no ratification of a contract made without authority and which does not purport to bind the person ratifying it. O'Connor v. Camp, 158 S. W. 203; Moore v. Powell, 6 Tex. Civ. App. 43, 25 S. W. 472. And the authorities also support the statement, possibly with some limitations, that "when a person takes upon himself to contract for the sale of an estate where he is not the absolute owner of it nor has it in his power by the ordinary course of law or equity to make himself so, though the owner offer to make the seller a title," yet specific performance of the contract cannot be enforced or damages recovered for a breach against the seller. Pipkin v. James, 1 Humph. (Tenn.) 325, 24 Am. Dec. 655; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979; Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120; Hahl v. West, 61 Tex. Civ. App. 431, 129 S. W. 876; Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 741, 12 Am. St. Rep. 736; Gray v. Smith, 83 Fed. 824, 28 C. C. A. 168; Brown v. Lee, 192 Fed. 822, 113 C. C. A. 141. We need not analyze these authorities, however, because they do not, in our opinion, apply to the facts of this case. The jury found, and the finding is supported by the facts, that the contract written and signed by Armstrong, and by Brooks for Palmer, was not intended to become a contract until R. S. Palmer approved it. The signature of Palmer's name by Brooks, as agent thereto, on May 24th, had no legal importance. The contract was actually made a contract by Palmer's communication of his

acceptance thereof. Since before the final act on the part of Palmer which made the instrument a contract he had authority from his son and sons-in-law to go ahead with it, the contract may be truly said to have been made under authority from the said parties, and their acts, instead of being merely a ratification of an already existing contract, was authority for the making of the contract itself. Now, it is established by the decisions of our Supreme Court that the donee of a power to convey real estate may execute the power in his own name without referring in any way to the power or to the donor, and the donor will be bound, if it appear "from the attending circumstances that the donee did in fact act under and by virtue of the power conferred upon him to dispose of the property in question and that it was his intention to dispose of the property in accordance with the power so conferred." Hill v. Conrad, 91 Tex. 345, 43 S. W. 791, and authorities there cited. The same rule will doubtless apply to the making of executory contracts for the sale of real estate. 2 C. J. 683. The cases of Moore v. Powell and O'Connor v. Camp, supra, recognize such rule by implication.

[2] It is well established that authority to make an executory contract for the sale of real estate need not be in writing. We conclude, therefore, that the attending circumstances are sufficient to show that Palmer in the final act which gave the contract any legal standing as such was acting under authority from his son and sons-in-law, and that he was intending in such matter to act for them. The contract under these circumstances was made under their authority and would be binding on them. It results from this conclusion that the first assignment must be overruled.

[3] Appellant, under the second assignment, contends that the finding of the jury to the effect that the contract was ratified by R. S. Palmer by June 1, 1918, is not supported by the evidence. This contention is based on the terms of Palmer's telegram of May 31st and the statements made in the Brooks letter to Armstrong of June 15th. If the telegram referred to stood alone as the evidence of Palmer's acceptance of the contract, or the acceptance had been conveyed to Armstrong in the terms of the telegram, it may be that appellant's position under this assignment should be sustained. But we do not think the telegram of May 31st should be considered alone in ascertaining whether Palmer accepted the contract unconditionally. The signing of the contract on the back thereof and sending of the telegram of June 1st, and mailing of the contract to the bank, perhaps on said date, does evidence an unqualified acceptance of the contract. Acceptance on June 1st would be an acceptance by June 1st, as the word "by," used in this

connection, is construed as meaning on or before. Goldman v. Broyles, 141 S. W. 283; also authorities in Words and Phrases, both original and supplemental edition, cited under word "by." The telegram of May 31st is to be construed in connection with all the other circumstances and acts of Palmer, and we think the jury might reasonably have concluded that the expression "will expect him to pay interest on Mr. Austin's note from June 1st on "was not intended by Palmer as requiring a modification of the contract in this respect if that was not the purport of the contract itself, but as stating his understanding of the meaning of the contract as written, and we think the jury were warranted under all the circumstances in concluding that Palmer did accept the contract unconditionally on or before June 1st; and, since the terms of the telegram of May 31st itself were not communicated to Armstrong as the acceptance, the plaintiff would not be confined to this telegram alone as evincing his intention. It will be remembered that Brooks testified that he conveyed to Armstrong the information of an unconditional acceptance of the contract. Nor do we think that the letter of June 15th, written after Brooks had told Armstrong Palmer had approved the contract, and after Armstrong had unqualifiedly rejected it, should be necessarily taken as proposing a new term as to possession so as to annul Palmer's previous unqualified acceptance of the contract. Brooks explains that his purpose in writing this letter to Armstrong was to induce Armstrong to go on with the contract, notwithstanding his previous repudiation thereof. Brooks was an illiterate man unable to read and write, and probably did not mean to propose to defer possession until delivery of the deed and final consummation of the contract, as such a proposition would have been in the face of the contract and everything else he had previously said about the matter. The papers that were in the bank were not the deed, notes, etc., but merely the contract and abstract. It seems reasonable to conclude that Brooks meant that possession would be delivered upon Armstrong's withdrawal of his objection to the contract and an indication on his part of willingness to proceed.

The third assignment attacks the finding of the jury to the effect that Armstrong was notified of Palmer's ratification of the contract by June 1st. As we have already said, the testimony on this issue is conflicting. Some of Brooks' testimony is contradictory, but, taken as a whole, it is sufficient to warrant the jury's finding on this issue.

[4] The fourth assignment is to the effect that there was error in entering judgment in favor of E. Brooks for a part of the recovery E. Brooks and Palmer joined in the suit, and it was pleaded that said Palmer had assign-ed a part of the cause of action to the said Brooks. No evidence of any such assignment was offered. Brooks had no interest in the contract itself such as would support a suit, and of course his right to sue and recover depended on some assignment from the legal owner of the cause of action. But Palmer, since the contract was made in his name, could sue in his own name thereon. C. J. vol. 2, pp. 895–897; Tinsley v. Dowell, 87 Tex. 23, 26 S. W. 946; Texas Overall Co. v. Mummert, 157 S. W. 219; San Jacinto Rice Co. v. Lockett, 145 S. W. 1046. The pleading of the assignment of a part of the cause of action in the petition by Palmer is sufficient to bind him in a judgment entered on such pleading, and the defendant could not be harmed by the entry of such a judgment.

We have found no reversible error assigned, and the judgment will be affirmed.

On Motion for Rehearing.

[5] The appellant, in his motion for rehearing, advances a new proposition in support of his assignment complaining of the refusal of the court to instruct the jury peremptorily in his favor. This proposition is, in effect, that the contract between Palmer and Armstrong was a personal one; that under it Armstrong was entitled to the personal warranty of the title by Palmer, and the other undisclosed owners of parts of the land could not make themselves parties to the contract. We think it is true that Armstrong was entitled, under the contract, to a warranty of the title from Palmer, and an offer of anything less would not have been a fulfillment of the terms of the contract. Birmingham Matinee Club v. McCarty, 152 Ala. 571, 44 South. 642, 13 L. R. A. (N. S.) 156, 15 Ann. Cas. 237; Pancoast v. Dinsmore, 105 Me. 471, 75 Atl. 43, 134 Am. St. Rep. 582; Steiner v. Zwickey, 41 Minn. 448, 43 N. W. 376; Crabtree v. Levings, 53 Ill. 526; Mechem on Agency (2d Ed.) § 2068; 39 Cyc. 1554.

[6] But it does not appear that Armstrong was asked to forego his right to Palmer's warranty in the consummation of the contract. No formal tender of deeds was made by Palmer. Armstrong's repudiation of the contract before the time for delivery of the deeds rendered this unnecessary. Porter v. Memphis Land & Commission Co., 159 S. W. 497; 39 Cyc. 1542. Palmer alleged in general terms that he was ready and willing to carry out the terms of said contract and was prevented from doing so by the repudiation thereof on the part of Armstrong. He testified generally that he was willing and ready to perform the contract according to its terms, and that he was preparing to secure and would have secured the necessary deeds from the other owners of the land when notified of Palmer's repudiation of the contract. We take it that the conditions of

the contract could have been fulfilled either by Palmer taking deeds from the others to himself and executing his own deed to Armstrong or perhaps by securing deed from the others to Armstrong for the parts of the land owned by them, and executing his own warranty of the title to all the land. Barnett v. Morrison, 12 Ky. (2 Litt.) 68; Gavin v. Hagen, 15 Cal. 208. The general character of the evidence is sufficient to warrant the conclusion in support of the judgment that plaintiff was ready to do whatever was necessary and proper on his part to be done to satisfy the terms of the contract. If Palmer was bound by the contract to execute the warranty, and we think that he was (Ash v. Beck, 68 S. W. 53), and the other owners of the land were bound by their previous authorization to put Palmer in position to enable him to perform the contract and make good title to all the land in accordance with its terms, and we think they were, then we see no good reason for holding that the other party to the contract should not be bound thereby, and it follows that, if Palmer was willing to carry out the contract, he would be entitled to recover damages for its breach.

[7] After all, the liability of the vendee on a contract for the purchase of real estate, made with a vendor who does not have the title himself, but who at the proper time is ready to make the title contracted for, depends on the answer to the query as to whether the vendor is a bona fide contractor within the meaning of the authorities on this subject, such as Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736, Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979, and other authorities cited in the original opinion in this connection.

"One who speculates upon that of which he has no control or the means of acquiring it is not a bona fide contractor. But the general rule is that, where a contract is entered into in good faith, it is not necessary that the vendor be actually in the situation to perform it at the time it is entered into, provided he be able at the proper time to place himself in that situation." Townshend v. Goodfellow, supra.

We think that the facts would justify the finding that the appellee, in making the contract, was acting in good faith within the meaning of this rule. His letters to Brooks, listing the land for sale, referred to the owners as "we." It is reasonable to suppose that at this time he was acting for himself and under authority from his son and sons-in-law in proposing the sale of the land on such terms. When Brooks made the contract for sale on different terms, subject to his approval, he submitted such contract to the others and had their authority to accept it before doing the act that made the signed instrument a real contract.

Appellant vigorously attacks the latter conclusion of fact announced and requests that we make fuller findings thereon. In response to this request we quote the following from the testimony of the appellee:

"There are four owners of this section. I sent this contract for their approval, and they agreed to it. * * * Two of them seen the contract. The two that saw it didn't see it until in about June; I don't know just what day it was; I guess it was,—I don't know just what day. My boy told me to go ahead and sell his; whatever I done would be all right; told me to go ahead and sell it. My sons-in-law also told me the same thing. I talked to two of my sons-in-law and phoned to the other one concerning the sale of this property, and they said to go ahead with it."

Palmer telegraphed on June 1st, "Have mailed contract and abstract to bank." The bank received the contract in an envelope postmarked "June," the date being illegible. It is well known that evidence fixing dates from memory is most unreliable. When the foregoing evidence is considered together, we think the conclusion would be warranted that Palmer mailed the contract to the bank on June 1st, as stated in his telegram, and that he had before this secured the authority from the others to make such contract.

We adhere to the opinion that the acts of the other owners amounted to an authorization to Palmer to make the contract rather than a ratification of an existing contract, thus distinguishing our holding from that of O'Connor v. Camp, 158 S. W. 203, and other authorities cited by appellant to the same effect.

"Ratification is not a form of authorization; it is rather a cure for the lack of authorization or a substitute for authorization. It presupposes that there was no authority, and there can, in the nature of the case, be no authority to do an act given after the act is done." Mechem on Agency (2d Ed.) § 348.

If we are correct in our conclusions, the act was not done, the contract had not been made, when the authority was given in this instance.

We think the motion for rehearing should be overruled.