## POLLARD *v.* VINTON.

1. The legal character and effect of a bill of lading stated in reference to its negotiable quality.
2. Neither the master of a steamboat, nor its shipping agents at points on the rivers of the interior where cargo is received and delivered, can, by giving a bill of lading for goods not received for shipment, bind the vessel or its owner, and such bill is void even in the hands of a transferee in good faith and for value.
3. *Schooner Freeman* v. *Buckingham* (18 How. 182) cited and approved.

ERROR to the Circuit Court of the United States for the District of Kentucky.

The facts are stated in the opinion of the court.

*Mr. E. Ellery Anderson* for the plaintiff in error.

*Mr. Benjamin H. Bristow* and *Mr. Augustus E. Willson* for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The defendant in error, who was also defendant below, was the owner of a steamboat running between the cities of Memphis, on the Mississippi River, and Cincinnati, on the Ohio River, and is sued on a bill of lading for the non-delivery at Cincinnati of one hundred and fifty bales of cotton, according to its terms. The bill of lading was in the usual form, and signed by E. D. Cobb & Co., who were the general agents of Vinton for shipping purposes at Memphis, and was delivered to Dickinson, Williams, & Co. at that place. They immediately drew a draft on the plaintiffs in New York, payable at sight, for $5,900, to which they attached the bill of lading, which draft was duly accepted and paid. No cotton was shipped on the steamboat, or delivered at its wharf or to its agents for shipment, as stated in the bill of lading, the statement to that effect being untrue.

These facts being undisputed, as they are found in the bill of exceptions, the court instructed the jury to find a verdict for the defendant, which was done, and judgment rendered accordingly. This instruction is the error complained of by the plaintiffs, who sued out the present writ.

A bill of lading is an instrument well known in commercial transactions, and its character and effect have been defined by judicial decisions. In the hands of the holder it is, evidence of ownership, special or general, of the property mentioned in it, and of the right to receive said property at the place of delivery. Notwithstanding it is designed to pass from hand to hand, with or without indorsement, and it is efficacious for its ordinary purposes in the hands of the holder, it is not a negotiable instrument or obligation in the sense that a bill of exchange or a promissory note is. Its transfer does not preclude, as in those cases, all inquiry into the transaction in which it originated, because it has come into hands of persons who have innocently paid value for it. The doctrine of *bona fide* purchasers only applies to it in a limited sense.

It is an instrument of a twofold character. It is at once a receipt and a contract. In the former character it is an acknowledgment of the receipt of property on board his vessel by the owner of the vessel. In the latter it is a contract to carry safely and deliver. The receipt of the goods lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry or to deliver.

To these elementary truths the reply is that the agent of defendant has acknowledged in writing the receipt of the goods, and promised for him that they should be safely delivered, and that the principal cannot repudiate the act of his agent in this matter, because it was within the scope of his employment.

It will probably be conceded that the effect of the bill of lading and its binding force on the defendant is no stronger than if signed by himself as master of his own vessel. In such case we think the proposition cannot be successfully disputed that the person to whom such a bill of lading was first delivered cannot hold the signer responsible for goods not received by the carrier.

Counsel for plaintiffs, however, say that in the hands of subsequent holders of such a bill of lading, who have paid value for it in good faith, the owner of the vessel is estopped by the policy of the law from denying what he has signed his

name to and set afloat in the public market. However this may be, the plaintiffs' counsel rest their case on the doctrine of agency, holding that defendant is absolutely responsible for the false representations of his agent in the bill of lading.

But if we can suppose there was testimony from which the jury might have inferred either mistake or bad faith on the part of Cobb & Co., we are of opinion that Vinton, the ship-owner, is not liable for the false statement in the bill of lading, because the transaction was not within the scope of their authority.

If we look to the evidence of the extent of their authority, as found in the bill of exceptions, it is this short sentence : —

"During the month of December, 1873" (the date of the bill of lading), "the firm of E. D. Cobb & Co., of Memphis, Tennessee, were authorized agents of the defendant at Memphis, *with power to solicit freights and to execute and deliver to shippers bills of lading for freight shipped on defendant's steamboat, ' Ben. Franklin.'* "

This authority to execute and deliver bills of lading has two limitations; namely, they could only be delivered to shippers, and they could only be delivered for freight shipped on the steamboat.

Before the power to make and deliver a bill of lading could arise, some person must have shipped goods on the vessel. Only then could there be a shipper, and only then could there be goods shipped. In saying this we do not mean that the goods must have been actually placed on the deck of the vessel. If they came within the control and custody of the officers of the boat for the purpose of shipment, the contract of carriage had commenced, and the evidence of it in the form of a bill of lading would be binding. But without such a delivery there was no contract of carrying, and the agents of defendant had no authority to make one.

They had no authority to sell cotton and contract for delivery. They had no authority to sell bills of lading. They had no power to execute these instruments and go out and sell them to purchasers. No man had a right to buy such a bill of lading of them who had not delivered them the goods to be shipped.

Such is not only the necessary inference from the definition

of the authority under which they acted, as found in the bill of exceptions, but such would be the legal implication if their relation to defendant had been stated in more general terms. The result would have been the same if it had been merely stated that they were the shipping agents of the owner of the vessel at that point.

It appears to us that this proposition was distinctly adjudged by this court in the case of *Schooner Freeman* v. *Buckingham*, 18 How. 182.

In that case the schooner was libelled in admiralty for failing to deliver flour for which the master had given two bills of lading, certifying that it had been delivered on board the vessel at Cleveland, to be carried to Buffalo and safely delivered. The libellants, who resided in the city of New York, had advanced money to the consignee on these bills of lading, which were delivered to them. It turned out that no such flour had ever been shipped, and that the master had been induced, by the fraudulent orders of a person in control of the vessel at the time, to make and deliver the bills of lading to him, and that he had sold the drafts on which libellants had paid the money and received the bills of lading in good faith.

A question arose how far the claimant, who was the real owner, or general owner, of the vessel could be bound by the acts of the master appointed by one to whom he had confided the control of the vessel; and the court held that, having consented to this delivery of the vessel, he was bound by all the acts by which a master could lawfully bind a vessel or its owner.

The court, in further discussing the question, says: "Even if the master had been appointed by the claimant, a wilful fraud committed by him on a third person by signing false bills of lading would not be within his agency. If the signer of a bill of lading was not the master of the vessel, no one would suppose the vessel bound; and the reason is, because the bill is signed by one not in privity with the owner. But the same reason applies to a signature made by a master out of the course of his employment. The taker assumes the risk, not only of the genuineness of the signature, and of the fact that the signer was master of the vessel, but also of the apparent authority of the

master to issue the bill of lading. We say the apparent author-
ity, because any secret instructions by the owner, inconsistent
with the authority with which the master appears to be clothed,
would not affect third persons. But the master of a vessel has
no more apparent authority to sign bills of lading than he has
to sign bills of sale of the ship. He has an apparent authority,
if the ship be a general one, to sign bills of lading for cargo
actually shipped; and he has also authority to sign a bill of
sale of the ship when, in case of disaster, his power of sale
arises. But the authority in each case arises out of and de-
pends upon a particular state of facts. It is not an unlimited
authority in one case more than in the other; and his act in
either case does not bind the owner even in favor of an inno-
cent purchaser, if the facts on which his power depended did
not exist; and it is incumbent upon those who are about to
change their condition upon the faith of his authority, to ascer-
tain the existence of all the facts upon which his authority
depends."

The court cites as settling the law in this way in England
the cases of *Grant* v. *Norway*, 10 C. B. 665, *Coleman* v. *Riches*,
16 id. 104, *Hubbersty* v. *Ward*, 8 Exch. Rep. 330, and *Walter*
v. *Brewer*, 11 Mass. 99. See also *McLean & Hope* v. *Fleming*,
Law Rep. 2 H. of L. (Sc.) 128; Maclachlan's Law of Mer-
chant Shipping, 368, 369.

It seems clear that the authority of E. D. Cobb & Co., as
shipping agents, cannot be greater than that of the master of a
vessel transacting business by his ship in all the ports of the
world.

And we are unable to see why this case is not conclusive of
the one before us, unless we are prepared to overrule it
squarely. The very questions of the power of the agent to
bind the owner by a bill of lading for goods never received,
and of the effect of such a bill of lading as to innocent pur-
chasers without notice, were discussed and were properly in
the case, and were decided adversely to the principles on which
plaintiffs' counsel insist in this case. Numerous other cases
are cited in the brief of counsel in support of these views, but
we deem it unnecessary to give them more special notice.

The case of *New York & New Haven Railroad Co.* v.

*Schuyler* (34 N. Y. 30) is much relied on by counsel as opposed to this principle.

Whatever may be the true rule which characterizes actions of officers of a corporation who are placed in control as the governing force of the corporation, which actions are at once a fraud on the corporation and the parties with whom they deal, and how far courts may yet decide to hold the corporations liable for such exercise of power by their officers, they can have no controlling influence over cases like the present. In the one before us it is a question of *pure agency*, and depends solely on the power confided to the agent.

In the other case *the officer is the corporation* for many purposes. Certainly a corporation can be charged with no intelligent action, or with entertaining any purpose, or committing any fraud, except as this intelligence, this purpose, this fraud, is evidenced by the actions of its officers. And while it may be conceded that for many purposes they are agents, and are to be treated as the agents of the corporation or of the corporators, it is also true that for some purposes they are the corporation, and their acts as such officers are its acts.

We do not think that case presents a rule for this case.

*Judgment affirmed.*

NOTE. — *Pollard* v. *Mail Line Company,* error to the Circuit Court of the United States for the District of Kentucky, was argued at the same time and by the same counsel as the preceding case. MR. JUSTICE MILLER remarked that the bill of exceptions in each case being identical, except as to the name of the defendant and the steamboat owned by it, the judgment must be

*Affirmed.*

MR. JUSTICE HARLAN did not sit in these two cases, nor take any part in deciding them.