## LAW *v.* BOTSFORD and others.

### (*District Court, E. D. Michigan.* February 8, 1886.)

1. CARRIAGE OF GOODS BY VESSEL—DUTY OF VESSEL—DELIVERY.

    A vessel discharges her whole duty to her cargo by delivering in good order all that she has received.

2. SAME—CUSTOM—DEDUCTION FROM FREIGHT.

    A custom to deduct from the freight earned the value of any deficiency between the quantity delivered and that stated in the bill of lading, and that the carrier shall not be permitted to show that he delivered all he received, is unreasonable and invalid.

3. SAME—BILL OF LADING—POWER OF MASTER.

    The master has no power to bind the vessel by an agreement in the bill of lading that the same shall be conclusive as between the shippers and carrier as to the quantity of cargo to be delivered to the consignees.

In Admiralty.

*F. H. Canfield,* for libelant.

*S. S. Babcock,* for respondents.

BROWN, J. This is a libel *in personam* for freight. The facts of the case are substantially as follows: In November, 1884, the schooner Lizzie A. Law took on board at Port Huron a cargo of wheat for Buffalo, and received two bills of lading, amounting to the sum of 46,047 bushels. The second mate attended to the loading in of the wheat from the elevator at Port Huron, and, with the weighman of the elevator, tallied the separate bins as they went on board the schooner, and upon completing the lading the master received two bills of lading, signed by the defendants, for this amount. The bills of lading contained the following somewhat extraordinary stipulation:

"It is agreed between the carriers and shippers and assigns that, in consideration especially of the freight hereon named, the said carriers, having su-

pervised the weighing of said cargo inboard, hereby agree that this bill of lading shall be conclusive, as between shippers and assigns and carriers, as to the quantity of cargo to be delivered to consignees at the port of destination, (except when grain is heated or heats in transit,) and that they will deliver the full quantity hereon named, or pay for any part of the cargo not delivered at the current market price; the value hereof to be deducted from the freight money by consignees, if they shall so elect, and thereupon the carrier shall be subrogated to the shippers' and owners' rights of property, and action therefor."

The address on the margin was as follows: "Order of J. E. & W. F. Botsford, New York. Notify David Dows & Co., care E. B. Wilbur & Co., Buffalo, for transhipment only, identity to be preserved."

The vessel proceeded to Buffalo with her cargo, where it was weighed out at the elevators, and, as is not unusual, there was an apparent shortage of some 496 bushels. The elevator at Buffalo, conforming to a usage which is said to be well known, and indeed universal, deducted the value of these 496 bushels from the freight, and paid the residue to the master of the vessel. This action is brought to recover the amount of this unpaid balance of freight.

That the custom of deducting shortage in this way is, in the absence of an express stipulation, unreasonable and invalid, was settled by the supreme court of this state in the case of *Strong* v. *Grand Trunk R. Co.*, 15 Mich. 206, in which the court held that the usage, however convenient, could only rest for its observance upon the consent of parties. It is a custom which has repeatedly been held void by the courts, and one which has been submitted to by shipmasters because the amount of the shortage is usually too small to justify the expense of litigation. At the same time there is no doubt that the vessel is bound to deliver all that she received, and that the fact that the cargo, when weighed out, does not tally as much as it did when it was weighed in, creates a presumption that some of it has been lost in transit, and throws upon the vessel the burden of showing that there has been no loss. But if the intermediate consignee deducts from the freight the value of the shortage, he does so at the peril of its being recovered back, if in fact there has been no loss in transit. In this case it appears very clearly, and that is one of the points in the case about which there is practically no dispute, that there was no loss in transit. The Lizzie A. Law delivered all she received. There was evidence tending to show that, at the Lime Kilns, a portion of the cargo was taken from one hatch, and wheeled over to another hatch, merely as a shift, for the purpose of decreasing the draught of the vessel forward, and increasing it aft; in other words, to trim the vessel so that she could get over the Lime Kilns. But there is no evidence that a bushel of the wheat was lost; indeed, the evidence is explicit that there was none.

It cannot be too well understood that a vessel has discharged her entire duty when she has delivered all she has received. This is not only the dictate of common sense, but is also the law as laid down

in *Shepherd* v. *Naylor*, 5 Gray, 591, and *Kelley* v. *Bowker*, 11 Gray, 428. So that, while the fact that the vessel did not tally as much at Buffalo as at Port Huron cast upon the master the burden of proving that she delivered all that she received, he fully satisfied this requirement, and hence I think is exonerated from liability in that particular. In this view it is not necessary for me to solve the question, which in its nature is insoluble, viz., whether the cargo was correctly weighed at Port Huron or at Buffalo. It is impossible for us to tell at this time where the mistake occurred. There was a mistake in measuring this cargo either inboard or outboard. If the mistake occurred at Buffalo, then the vessel is entitled to her freight upon the whole amount of the bill of lading. If the mistake occurred at Port Huron, she is entitled to her freight upon the Buffalo weight. As this is all that is claimed in this case, I am not obliged to determine whether the mistake was at one point or the other.

That the defendants in this case, aside from the stipulation in the bill of lading, are liable for the unpaid freight is beyond question. They were the consignors of the cargo, and the rule is well settled that the consignor may be resorted to, notwithstanding the cargo has been delivered to the consignee. That the original contract of the vessel is with him, and that the master may waive his remedy against the consignee, and resort to the consignor, I believe is uniformly held by the authorities. But in this case the defendants were not only the consignors, but they were also the consignees. The bill of lading is addressed to the order of J. E. & W. F. Botsford, New York, care of E. D. Wilbur & Co., Buffalo. The rule is also well settled that where the cargo is consigned to the care of another, that person is only the agent of the final consignee, who in this case is the consignor, so that, whether the defendants be sued as consignors or consignees, the action will lie against them. Hutchinson, Carriers, § 450.

It remains only to consider the effect of the stipulation in the bill of lading that the amount stated in the bill shall be conclusive as between the shippers and the carriers. This is certainly a very singular stipulation, and was designed undoubtedly to obviate the difficulties which are thrown in the way of deducting shortage, but we think the answer to it is not a difficult one. It is well settled by the case of *Grant* v. *Norway*, 10 C. B. 665, in England, and *The Freeman*, 18 How. 182, in this country, that the master has no authority to sign a bill of lading for a cargo not laden on board. Now, this is nothing more nor less than such a contract. It is an agreement that the amount named in the bill of lading shall be conclusive upon the vessel, though never a bushel may have been laden on board. The master has no authority to make a stipulation of this kind. It is possible that it would be binding between the consignor and the owner of the vessel if he assented to it personally, but the power of the master to bind his ship is limited to contracts made in the usual and ordinary course of business. In the above case of *The Freeman*, it is said

by the supreme court that the master has no more an apparent unlimited authority to sign bills of lading than he has to sign bills of sale of the ship. See, also, *Pollard* v. *Vinton*, 105 U. S. 7. His authority is to sign bills of lading of the usual tenor and description, consisting of a receipt for the amount shipped, subject to explanation, and a contract to deliver in the usual form at the port of destination. Such a contract the master has undoubtedly the right to sign, but he has no right to sign such contract before the cargo is laden on board. In this case there is no question of *bona fide* indorsement, and I think it very clear that the stipulation, while it may perhaps bind the master personally, is not obligatory upon the vessel.

The libelant is entitled to a decree for the residue of his freight.