ST. PAUL ROLLER-MILL CO. *v.* GREAT WESTERN DESPATCH CO.

*(Circuit Court, D. Minnesota.* April, 1886.)

1. SALE—BILL OF LADING—DRAFT FOR PRICE OF GOODS—"ACCEPTANCE AND COLLECTION."

A bill of lading deliverable to the order of the shipper, and attached to a draft drawn upon the purchaser, and sent to a bank "for acceptance and collection," with no other instructions, is rightfully delivered by the bank on acceptance of the draft, and passes the title to the goods, and the bank need not hold the bill of lading until payment.

2. SAME—STOPPAGE IN TRANSITU—BILL OF LADING—INDORSEE FOR VALUE—ANTECEDENT DEBT.

A consignor who, on discovery of the purchaser's insolvency, has notified the defendant not to deliver goods to him or his assigns, has no right of stoppage *in transitu,* as against an indorsee of the bill of lading for valuable consideration, even though such valuable consideration be an antecedent debt.[1]

3. SAME—BILL OF LADING—ORDER OF SHIPPER—DELIVERY UNINDORSED—TITLE TO PROPERTY.

A bill of lading, running to the order of the shipper, being delivered unindorsed to the purchaser by the shipper's agent, with intent to pass the title, transfers the title to the property as absolutely as would a bill of sale.

Demurrer to Amended Complaint.

On November 17, 1883, the plaintiff shipped a car-load of flour at St. Paul, Minnesota, by the defendant's transportation line, consigned to itself at Boston, and took a bill of lading therefor showing such consignment. On the same day plaintiff made its draft, at 15 days' sight, against the flour mentioned in the bill of lading upon one Whitcomb, of Boston, and forwarded the draft, with the bill of lading attached, unindorsed, to the Tremont National Bank of Boston "for acceptance and collection." Upon presentation, November 22nd, Whitcomb accepted the draft, and received the bill of lading from the bank without indorsement. He afterwards indorsed and transferred the bill of lading to the National Bank of Redemption for an antecedent debt which he owed said bank. Such transfer of the bill of lading by Whitcomb was not in full payment or satisfaction of the antecedent debt, but with the understanding that the bank should sell the flour on its arrival in Boston, and Whitcomb should have credit on his debt for whatever amount the flour brought. If the proceeds of the flour should amount to more than said debt, the balance was to be paid back to Whitcomb; and if the proceeds were less than the debt, then Whitcomb should pay the bank the deficit. The ap-

---

[1] For a discussion of the right of stoppage *in transitu,* see The E. H. Pray, *post,* 474, and note, 476.

plication of the proceeds of the flour did result in a deficit which is still due and owing from Whitcomb to the bank. Afterwards, and before the flour arrived in Boston, plaintiff, being informed of the insolvency of Whitcomb, notified defendant not to deliver the flour to Whitcomb or his assigns. On the arrival of the flour in Boston the National Bank of Redemption claimed to be the owner, and entitled to the possession thereof, and demanded it from the defendant, and thereupon defendant delivered said flour to the said bank. The plaintiff brings suit against the defendant for conversion of the flour. The defendant demurs to the complaint.

*Emerson Hadley*, for the demurrer.
*Bigelow, Flandrau & Squires, contra.*

NELSON, J. The above facts are undisputed, and the questions presented for determination are clearly raised by the demurrer to the complaint. I think they are settled by the United States supreme court. Expressions of opinion are found in some state tribunals adverse to the propositions announced by the supreme court, but the opinion of the latter is supported by an exhaustive review of the principles of commercial law involved, and a logical conclusion is reached.

As applicable to the facts in the case at bar, discussed by that court, the first point is whether the bill of lading, deliverable to the order of plaintiff, (the shipper,) and attached to the draft drawn upon Whitcomb, and sent to the Tremont Bank "for acceptance and collection," with no other instruction, was rightfully delivered on acceptance thereof, and passed the title to the flour, or whether the bank must hold the bill of lading until payment of the draft before it could pass title by its delivery. *National Bank* v. *Merchants' Bank*, 91 U. S. 92, settles this question, and a reference to this authority is all that is necessary. Whitcomb, on acceptance of the draft, was entitled to the bill of lading, and the title to the flour passed, so that, on transferring it to the National Bank of Redemption for an antecedent debt, under an agreement that the bank should sell the flour on its arrival in Boston, and credit him on the debt, he lost control of the flour. When the plaintiff, on discovery of Whitcomb's insolvency, notified the defendant not to deliver the flour to him or his assigns, did the right of stoppage *in transitu* exist?

There are no circumstances disclosed to show the bill of lading was not fairly and honestly assigned and transferred by Whitcomb; and, if the antecedent debt is a valuable consideration, the answer to this question must be in the negative. Authorities differ upon this point, and some courts hold that such transfer as security for a pre-existing debt is not for a valuable consideration, and does not defeat the right of stoppage *in transitu*, but the United States supreme court (*Railroad Co.* v. *National Bank*, 102 U. S. 14) has announced the rule to be that such transfer is not an improper use of commercial securities, and the *bona fide* holder is not affected by equities or defenses

between prior parties of which there was no notice. True, in the case of *Railroad Co.* v. *National Bank* the transfer was of promissory notes, but the rule extends to all commercial securities, including bills of lading; and the case of *Leask* v. *Scott*, 2 Q. B. Div. 376, which was a transfer of a bill of lading, is cited with approval by Judge CLIFFORD in his opinion. The transfer and assignment of a bill of lading is equivalent to a delivery of the property described therein.

In this case the bill of lading was delivered to Whitcomb by the Tremont Bank, with intent to put the flour within his reach. The draft was drawn against the flour, and was received by the bank before its arrival. Such symbolical delivery is sufficient to pass title. These instruments are well known to the commercial world. They represent the property described; and in the hands of the holder they are evidence of ownership. *Pollard* v. *Vinton*, 105 U. S. 8. The delivery, with intent to pass the title to the property, does so, although drawn to order of shipper, and unindorsed, and such assignment absolutely transfers title to the property as would a bill of sale. *McNeil* v. *Hill*, 1 Woolw. 97.

It is urged that the bill of lading, running to order of the shipper, and delivered to Whitcomb without indorsement, carried on its face notice that he held it subject to equities between prior parties. The Tremont Bank was the agent of plaintiff, and, in the absence of any instructions further than appeared by the indorsement on the draft, had no right to hold the bill of lading after the draft was accepted. It is of no importance that it was delivered unindorsed. It was the intention of the shipper that its agent should deliver the bill of lading on the acceptance of the draft. Such is the legal inference from the facts, and it is not qualified by the additional words "for collection." *National Bank* v. *Merchants' Bank, supra.*

Judgment for defendant.