## B. W. McMAHAN & CO. v. STATE NAT. BANK OF SHAWNEE.

(Court of Civil Appeals of Texas. San Antonio. Oct. 15, 1913. On Motion for Rehearing, Nov. 12, 1913.)

1. CARRIERS (§ 55*)—BILL OF LADING—NEGOTIABILITY.

A bill of lading is only quasi negotiable and represents personal property and not money.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 130, 168; Dec. Dig. § 55.*]

2. CARRIERS (§ 58*)—BILLS OF LADING—EFFECT OF TRANSFER.

The transfer of a bill of lading transfers only the title to, and the constructive possession of, the very goods which it represents.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

3. CARRIERS (§ 51*) — BILLS OF LADING — "SHIPPER'S ORDER."

The term "shipper's order," as used in bills of lading, is well understood and means that the title remains in the shipper until he orders a delivery of the goods.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 149; Dec. Dig. § 51.*]

4. CARRIERS (§ 58*) — BILLS OF LADING — TITLE TO SHIPMENT.

Where, under an agreement with a dealer in cotton, a bank paid drafts drawn on the dealer for the price of shipments of cotton and received the attached bills of lading therefor drawn to the shipper's order, the bank acquired the title to, and constructive possession of, the cotton without an actual delivery of the cotton to it, and the dealer had no title or interest therein.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

5. WAREHOUSEMEN (§ 15*)—WAREHOUSE RECEIPTS—EFFECT OF TRANSFER.

Cotton compress receipts are warehouse receipts, and the sale or transfer thereof carries the constructive delivery and ownership of the goods for which they stand.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 31–34, 37; Dec. Dig. § 15.*]

6. CARRIERS (§ 58*) — BILLS OF LADING — RIGHTS OF TRANSFEREE.

Where a bank, which under an agreement with a dealer in cotton had paid drafts drawn on the dealer and received the attached order bills of lading for cotton, intrusted such bills of lading to the dealer upon his representation that he wanted them in order to pay the freight and obtain compress receipts, but the dealer, after obtaining compress receipts, transferred them to one to whom he had sold the cotton without the bank's knowledge, the purchaser acquired only such title as the dealer had and as against the bank acquired no title at all, since the sale of found or stolen property, or property obtained by fraud, vests no better title because made through the means of a bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

7. ESTOPPEL (§ 112*) — PLEADING — SUFFICIENCY.

In an action by a bank which had paid drafts drawn on a dealer in cotton and received the bills of lading for cotton attached thereto against one to whom the dealer, having obtained the bills of lading by fraud, sold the cotton, defendant's plea that it was an innocent purchaser for value was not sufficient, in connection with the allegation of the petition that the bills of lading were intrusted to the dealer for a particular purpose, to raise the issue of estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 302; Dec. Dig. § 112.*]

8. ESTOPPEL (§ 110*) — PLEADING — SUFFICIENCY.

Estoppel is an affirmative defense and must be specially pleaded.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 300; Dec. Dig. § 110.*]

9. ESTOPPEL (§ 75*) — BILLS OF LADING — RIGHTS OF OWNER—ESTOPPEL.

A bank which had paid drafts drawn on a dealer of cotton and received the attached bills of lading for cotton did not, by intrusting the bills of lading to the dealer upon his representation that he needed them in order to pay the freight and obtain compress receipts, estop itself to deny the dealer's right to sell the cotton.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 192–195; Dec. Dig. § 75.*]

10. APPEAL AND ERROR (§ 1001*)—REVIEW—QUESTIONS OF FACT.

It is not within the province of the Court of Civil Appeals to reverse findings which are supported by evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by the State National Bank of Shawnee against the Mallory Steamship Company, which impleaded B. W. McMahan & Co., who filed a petition of intervention. From a judgment for plaintiff, the intervener appeals. Affirmed.

P. K. Morrill, of Altus, Okl., and Mann & Baker, of Galveston, for appellant. Stanard, Wahl & Ennis, of Shawnee, Okl., and Wm. B. Lockhart and W. T. Armstrong, both of Galveston, for appellee.

TALIAFERRO, J. This suit was by the State National Bank of Shawnee (Oklahoma) against the Mallory Steamship Company for the recovery of 100 bales of cotton in possession of the steamship company; the Bank claiming title to the cotton. The Steamship Company impleaded McMahan & Co., who, by petition of intervention, set up their claim to the cotton. By agreement the cotton was sold, the Steamship Company was dismissed from the suit, and the money held to await the determination of the rights of the bank and the interveners, who are appellants here.

The facts, briefly stated, are: D. V. Liddell & Co., cotton buyers of some sort, called "scalpers," were dealing in Shawnee, Okl., and vicinity. They approached the State National Bank of Shawnee and obtained a verbal agreement from that bank to honor drafts drawn upon them with bills of lading for cotton attached; such drafts to be accepted by them and the cotton to be held by the bank and sold jointly by it and the Liddells, from the proceeds of which sales the

bank was to be reimbursed. The Liddells had no account with the bank at any time but had executed to it a note and mortgage on personal property to secure possible deficiencies in the cotton sales.

In pursuance of this agreement the Liddells' agents bought cotton from various persons who drew drafts for the price of the cotton. These drafts were drawn upon the Liddells in favor of either the shippers or the banks through which they were drawn. In due course of business they came to the State National Bank of Shawnee with bills of lading attached. They were accepted by the Liddells and paid by the bank. The bills of lading were all to shippers' order, and the bills of lading and the drafts were all held by the bank subject to its agreement with the Liddells.

Prior to October 17, 1910, J. C. Liddell, Jr., one of the parties to the contract, made an agreement to sell, or did sell, the cotton in question to B. W. McMahan & Co., appellants in this case, without the knowledge or consent of the bank. On October 17th J. C. Liddell, Jr., went to the bank and, at his request, was given possession of the bills of lading "so that he might pay the freight and obtain compress receipts for the cotton." He promised to perform this service and bring the compress receipts back to the bank at once. The bills of lading were given to him for that purpose and his receipt taken therefor. He took them to the railroad company and obtained the compress receipts, but, instead of returning with them to the bank, he delivered the receipts to McMahan & Co., who, by virtue of the receipts, took possession of the cotton. McMahan & Co., in buying the cotton, acted in good faith, without knowledge of the theft of the bills of lading and compress receipts by Liddell, and they paid full value for the cotton. The bank did not discover the theft of the bills of lading until about October 25th, when upon inquiry it discovered that the cotton had been sold to McMahan & Co., and that it was then in Galveston in custody of the Mallory Steamship Company, consigned by McMahan & Co. to parties in New York. Judgment was rendered by the court below in favor of the bank, and this appeal is prosecuted by McMahan & Co.

[1-4] Appellants' first assignment of error insists that McMahan & Co. purchased the cotton in open market, from a regular dealer, at a full price, in the usual course of trade, and without notice of any right, title, or interest of the bank, and that therefore it took a good title to the cotton with the right to possession. If this is a case in which the doctrine of innocent purchaser could apply, appellants' contention is unanswerable. But is it such a case? The relation of the parties to the transaction and the character of the property involved are important matters to consider in resolving the question. The first points to be determined are: Was the title to the cotton ever vested in the appellee bank, and, if so, was the possession by Liddell of the bills of lading and compress receipts, in the manner in which he acquired them, indicia of title which would vest his vendee, an innocent purchaser for value, with a title superior to that of the bank? In answering these questions it becomes necessary to determine the nature of a bill of lading in its relation to commercial usages. It is well settled that a bill of lading is only quasi negotiable, being the representative of personal property and not of money. The transfer of a bill of lading has only the effect of transferring the title to, and the constructive possession of, the very goods for which the bill is a representative. The bills of lading in this case were issued to the owners of the cotton and were drawn to "shipper's order" and consigned to Liddell & Co. The term "shipper's order" is well understood in commercial usage and means that the title remains in the shipper until he has ordered a delivery of the goods. The bills of lading in question were indorsed in blank by the shippers and attached by them to drafts drawn upon Liddell & Co. for the price of the cotton. In the drafts either the shippers themselves or the banks through which they were transmitted were made payees. The drafts came to the appellee bank in due course of business, were accepted by the Liddells, and paid by appellee. The cotton was never at any time actually or constructively in the custody or control of the Liddells. No vestige of title or interest in the cotton ever vested in the Liddells. The only way they could have acquired an interest in the cotton was to pay the drafts held by appellee, when under their contract the bills of lading must have been turned over to them. Dows v. National Bank of Milwaukee, 91 U. S. 637, 23 L. Ed. 214. Liddell & Co. did not pay the drafts, and no title ever vested in them unless the delivery of the bills of lading to J. C. Liddell, Jr., under the circumstances in this case was sufficient to vest them with title.

It is too well settled for discussion that a bank which pays a draft attached to a shipper's order bill of lading, indorsed in blank, becomes the owner of the goods represented thereby. Such ownership invests it with title to, and constructive possession of, the goods, and actual delivery to it is unnecessary to perfect the proprietorship. Therefore, under the facts as above stated, the appellee bank was, at the time the bills of lading were taken by J. C. Liddell, Jr., the owner and in possession of the 100 bales of cotton in question. Adoue v. Seeligson, 54 Tex. 593; Dows v. National Bank of Milwaukee, supra; Bank v. Bank, 41 Tex. Civ. App. 535, 93 S. W. 209; Campbell v. Alford, 57 Tex. 159. The many cases cited and discussed by the above cases render further citations here unnecessary.

[5] Cotton compress receipts in the course of such business as is here revealed are simply warehouse receipts, and the legal status of the warehouse receipt is identical with that of a bill of lading in so far as its sale or transfer carries the constructive delivery and ownership of the goods for which it stands. Clay v. Gage, 1 Tex. Civ. App. 661, 20 S. W. 948; 40 Cyc. 407, and cases cited; Stamford Compress Co. v. Farmers' & Merchants' Bank (Sup.) 144 S. W. 1132, and cases there cited.

[6] If, then, the appellee bank was the legal owner and holder of the cotton on October 17, 1910, and up to that time Liddell & Co. never had any right or title thereto, was the delivery of the bills of lading by the bank to J. C. Liddell, Jr., on that day, such a delivery or transfer of the title to, or possession of, the cotton as to vest in an innocent purchaser from him a good title against the bank? This question can only be answered in the negative. As has been shown, a bill of lading is not like a bill of exchange, carrying to the purchaser in good faith, by mere indorsement and delivery, a title good against the world. The transfer of the bill of lading delivers but the goods and passes to the purchaser no better title than the seller had. The sale of found or stolen property, or property obtained by fraud, vests no better title because the sale is made through the means of an instrument called a bill of lading. A bill of lading is but a receipt for specific goods, and when Liddell sold to McMahan & Co. he sold them the cotton of which he was the tortious, if not felonious, possessor, and they took the title he had and no more. Stollenwerck v. Thacher, 115 Mass. 224; Shaw v. Merchants' Nat. Bank, 101 U. S. 557, 25 L. Ed. 892; 6 Cyc. 418 to 424, and cases there cited; Bank v. Luttgren, 29 Minn. 363, 13 N. W. 151; Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998. The first assignment of error is overruled, and what has been said disposes also of assignments Nos. 2, 3, 4, 4½, 5, and 7, and they are overruled.

[7-9] But appellants contend, in their sixth assignment of error, that the bank was, by its own negligence, in trusting the bills of lading to the custody of J. C. Liddell, Jr., estopped to deny his right to sell. They admit that they did not assert the defense of estoppel but contend that their plea of innocent purchaser for value, considered with the petition of the plaintiff, was sufficient to raise the issue in their behalf although not specifically set up in their pleading. They contend that the appellee in its original petition alleged its own negligence when it stated that it "intrusted the bills of lading to J. C. Liddell, Jr.," and that to complete their defense of estoppel they had but to show, under their plea, that McMahan & Co.,

had bought from Liddell in good faith, for value, and without notice.

Estoppel is an affirmative defense, and under our practice, from the earliest date, it has been held that an affirmative defense must be specially plead. In the case of Smith v. Sherwood, 2 Tex. 461, our Supreme Court said it should be known by this time that all affirmative defenses should be specially pleaded. Keeble v. Black, 4 Tex. 69; Scarborough v. Alcorn, 74 Tex. 360, 12 S. W. 72; Barker v. Abbott, 2 Tex. Civ. App. 147, 21 S. W. 72; Rail v. Bank, 3 Tex. Civ. App. 557, 22 S. W. 865; Hollifield v. Landrum, 31 Tex. Civ. App. 195, 71 S. W. 979; Casey v. Treadwell, 32 Tex. Civ. App. 480, 74 S. W. 791; Tex. Produce Co. v. Turner (Sup.) 27 S. W. 583; Stanger v. Dorsey, 22 Tex. Civ. App. 573, 55 S. W. 129; Anderson v. Nuckles, 34 S. W. 184. The trial court held that the allegations of the pleadings were not sufficient to raise the issue of estoppel, and we must concur in that holding. However, if it should be conceded that the pleadings of the plaintiff can in this case be construed to supply an allegation omitted from the appellant's intervention, it must still be held that neither such allegation nor the facts was sufficient to show negligence of the bank in such manner as to estop it from denying the authority of Liddell to sell the cotton.

The sixth assignment of error is therefore overruled. This also disposes of assignments Nos. 9 and 10 and the third proposition under assignments Nos. 3, 4, 4½, 7, 9 and 10.

[10] Appellants' eighth assignment of error and the fifth proposition under their eleventh assignment of error are overruled. They present questions as to the sufficiency of the evidence to support the findings of the trial court. There is evidence to support these findings, and it is not therefore within the province of this court to reverse them.

We find no error in the judgment of the lower court, and the judgment is affirmed.

### On Motion for Rehearing.

Appellants contend that this court erred in holding that the title to the cotton was in the appellee bank, because they assert the compress tickets (warehouse receipts) issued by the cotton compress upon the surrender of the bills of lading by Liddell were issued to "bearer." No such fact was proven. The tickets or receipts themselves were not introduced in evidence, nor was there any evidence of any kind which showed in whose favor the tickets were issued. Appellants must have had it in their power to make this proof, and, if the facts would have been beneficial to their interests, it must be assumed that they would have done so. We have carefully considered appellants' motion for rehearing and find no reason for altering our former opinion, and the motion is therefore overruled.