**John H. DALTON, Secretary of the Navy, Appellant,**

v.

**SHERWOOD VAN LINES, INC., Appellee.**

Nos. 93–1343, 93–1391, 93–1392, 93–1394, 93–1398, 93–1399, and 93–1400.

United States Court of Appeals, Federal Circuit.

March 17, 1995.

---

John K. Lapiana, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for appellant. With him on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director.

Robert J. Brooks, Washington, DC, argued, for appellee.

Before NEWMAN, RADER and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The issue in these seven consolidated cases is whether the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13, applies to a special kind of government transaction—the provision of transportation services to the government by a common carrier. We hold that when a common carrier provides transportation services to a government agency under the Transportation Act of 1940, and a government bill of lading serves as the contract between the parties, claims arising in connection with that contract are not subject to the Contract Disputes Act. The Armed Services Board of Contract Appeals therefore did not have jurisdiction in these cases.

## I

Sherwood Van Lines, Inc., (Sherwood) is a freight-forwarding common carrier that has transported the household goods of United States Navy service members on various occasions. In each instance at issue in these cases, the Navy issued a government bill of lading (GBL), a document used by the government when acquiring freight transportation services from common carriers. Each GBL served as the contract between the parties, establishing their respective rights with regard to the transportation services procured and provided.

Sherwood moved the service members' household goods as required by the GBLs and was paid the agreed-upon amount for each move. The service members subsequently filed claims with the Navy alleging that their property had been damaged during transport. The Navy paid each of the claims and then asked Sherwood for reimbursement. Sherwood refused. When the Navy and Sherwood were unable to settle their dispute through negotiation, the Navy set off the damage claims against other sums due Sherwood. Sherwood then asked the Navy to refund the offset monies on the ground that the damage claims were unfounded.

After obtaining no relief from the Navy, Sherwood filed an appeal as to each of the claims with the Armed Services Board of Contract Appeals. The government moved to dismiss the appeals, contending that the Board lacked jurisdiction over the claims. The government took the position that the Contract Disputes Act does not apply to disputes arising from the provision of transportation services pursuant to GBLs and that the Board was therefore not the proper forum for resolving such disputes.

The Board denied the motions to dismiss. It held that a GBL "contains all the terms necessary to be a [Contract Disputes Act] contract," and it refused to create an exception to the broad language of the Contract Disputes Act for GBL-based transactions. The Board therefore found that its jurisdiction, which is based on the Contract Disputes Act, was properly invoked.

On the merits, the Board held in favor of Sherwood in whole or in part with respect to seven of the claims that were before it. The government has appealed the jurisdictional issue to this court in each of the seven cases in which the Board ruled in favor of Sherwood on the merits.

## II

Section 321 of the Transportation Act of 1940, as amended, 49 U.S.C. § 10721, authorizes common carriers regulated by the Interstate Commerce Commission to provide transportation services to agencies of the federal government at or below their published tariff rates. In Section 322 of the Transportation Act of 1940, as amended, 31 U.S.C. § 3726, Congress set up a system for paying carriers for providing those services and a mechanism for resolving disputes arising from those transactions. Section 3726 provides that a carrier may be paid for its services in advance of audit, but that if an overcharge is subsequently discovered, the government may deduct the amount of the overcharge from funds otherwise due the carrier. § 3726(a), (b). A carrier must present a claim for payment to the General Services Administration (GSA) or other designated agency within three years of accrual. § 3726(a). If dissatisfied with the agency's action on the claim, the carrier may request review by the Comptroller General. § 3726(g)(1).

GSA has promulgated regulations pursuant to Section 3726 that flesh out the details of the two-tiered review procedure established by the statute. 41 C.F.R. Part 101–41. The regulations provide that disputed claims involving carrier overcharges must be submitted to GSA or a designated agency, after which an appeal may be taken to the Comptroller General. 41 C.F.R. § 101–41.603–4. Under the authority of the Federal Claims Collection Act, 31 U.S.C. § 3711, and the administrative offset statute, 31 U.S.C. § 3716, the regulations further provide for the setoff of loss and damage claims against monies owed to carriers, 41 C.F.R. § 101–41.504. The regulations direct that claims by carriers challenging such setoffs be filed with the agency from which the claims arose, 41

C.F.R. § 101–41.603–4(a), and permit carriers to appeal agency setoff decisions to the Comptroller General. 41 C.F.R. §§ 101–41.603–4(b), 101–41.701.

In its own regulations, the Navy has established procedures governing the processing of loss and damage claims arising from the transportation of household goods and other property. 32 C.F.R. §§ 751.21–.35. Like the GSA regulations, the Navy regulations invoke the Federal Claims Collection Act and provide for collection of loss and damage claims through setoff actions. 32 C.F.R. § 751.32. The Navy regulations also authorize appeals from the setoffs to be taken to the Comptroller General. 32 C.F.R. § 751.34.

■ The administrative remedies set forth in Section 3726 and the pertinent GSA and agency regulations are not a carrier's only means of challenging administrative setoffs. A dissatisfied carrier may also file suit under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491, to obtain judicial review of the setoff decision, regardless of whether the claimant has exhausted its administrative remedies by seeking the Comptroller General's review. *Iran Nat'l Airlines Corp. v. United States,* 360 F.2d 640, 175 Ct.Cl. 504 (1966).

### III

The issue in these cases is whether the Contract Disputes Act applies to claims arising from transportation services provided by common carriers pursuant to GBLs. The Board of Contract Appeals held that it does. The Board's analysis of that issue was quite straightforward. The Contract Disputes Act applies to any "express or implied contract ... entered into by an executive agency for ... the procurement of services." 41 U.S.C. § 602(a)(2). A GBL is, in part, a contract to provide transportation services. *Pollard v. Vinton,* 105 U.S. 7, 8, 26 L.Ed. 998 (1881). Therefore, the Board concluded, transportation services provided pursuant to a GBL are covered by the Contract Disputes Act, and disputes arising from such transactions are subject to the jurisdiction of the Boards of Contract Appeals.

■ Although that line of reasoning has considerable appeal, we reject it, because we are persuaded that Congress did not intend the Contract Disputes Act to apply to GBL–based transportation services of the sort at issue in these cases. When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option. *See* 41 U.S.C. § 605(b) (contracting officer's decision on a claim "not subject to review by any forum, tribunal, or Government agency" except as provided by the Contract Disputes Act); *Cecile Indus., Inc. v. Cheney,* 995 F.2d 1052, 1055–56 (Fed.Cir.1993); *Cascade Pacific Int'l v. United States,* 773 F.2d 287, 296 (Fed.Cir.1985).

The differences between the administrative review provisions of the Contract Disputes Act and Section 3726 confirm that Congress did not intend the two remedial schemes to apply to the same disputes. The Contract Disputes Act requires initial action on a claim by an agency contracting officer, 41 U.S.C. § 605(a), while Section 3726 and the transportation regulations require a claim to be submitted to the GSA or to "the agency out of whose activities [the claim] arose," 31 U.S.C. § 3726(a); 41 C.F.R. § 101–41.603–4(a). Under the Contract Disputes Act, administrative appeals are taken to the Board of Contract Appeals, 41 U.S.C. § 607; under Section 3726 and the GSA transportation regulations, such appeals go to the Comptroller General, 31 U.S.C. § 3726(g); 41 C.F.R. § 101–41.701; *see also* 32 C.F.R. § 751.34. The Contract Disputes Act contains no statute of limitations for presenting a claim to the contracting officer, but requires that an appeal to the Board of Contract Appeals be taken within 90 days of the contracting officer's decision, 41 U.S.C. § 606; Section 3726 and the GSA transportation regulations, by contrast, impose a three-year limitations period for presenting a claim to the deciding agency and a six-month limitations period for taking an administrative appeal to the Comptroller General, 31 U.S.C. § 3726(a), (g); 41 C.F.R. §§ 101–41.602, 101–41.701(b). Finally, the Contract Disputes Act provides for interest from the date the certified claim is

presented to the contracting officer, 41 U.S.C. § 611; Section 3726 does not provide for the payment of interest, *see Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 798 (Fed. Cir.1993); 41 C.F.R. § 101–41.604–2(b)(6).

In light of those differences, the two administrative review schemes cannot be regarded as complementary. Simply put, if the Contract Disputes Act applies to GBL-based transportation services, the procedures established by Section 3726 and the GSA and agency regulations do not.

■ We are not persuaded that Congress intended the Contract Disputes Act to have that effect. It is a "basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum," *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976), unless the later statute "expressly contradict[s] the original act or unless such a construction is absolutely necessary ... in order that the words of the later statute shall have any meaning at all," *Traynor v. Turnage,* 485 U.S. 535, 548, 108 S.Ct. 1372, 1381–82, 99 L.Ed.2d 618 (1988). Applying that principle here, we conclude that Congress did not intend the general provisions of the Contract Disputes Act to supplant the pre-existing system of administrative review specifically designed for transportation services subject to Section 3726.

■ The two-tiered administrative review scheme of Section 3726 was put in place in 1975, prior to the enactment of the Contract Disputes Act. Pub.L. No. 93–604, § 201, 88 Stat. 1960 (1975). Although the Contract Disputes Act contained a repealer provision, Pub.L. No. 95–563, § 14, 92 Stat. 2389–91 (1978), the predecessor of Section 3726 was not among the statutes expressly repealed. Nor is there any basis for finding that the Contract Disputes Act effected an implied repeal of the dispute-resolution provisions of that statute. Implied repeals are strongly disfavored, particularly "when we are urged to find that a specific statute has been repealed by a more general one." *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 168–69, 96 S.Ct. 1319, 1322–23,

47 L.Ed.2d 653 (1976). Moreover, any suggestion that the predecessor of Section 3726 was repealed by implication is put to rest by Congress's action in recodifying and amending Section 3726 on several occasions after the enactment of the Contract Disputes Act. *See* Pub.L. No. 97–258, 96 Stat. 976 (1982); Pub.L. No. 98–443, § 9(f), 98 Stat. 1707 (1984); Pub.L. No. 99–627, § 1, 100 Stat. 3508 (1986); Pub.L. No. 103–123, § 620A, 107 Stat. 1265 (1993).

Our conclusion that the Section 3726 procedures continue to apply to GBL-based transactions, even after the enactment of the Contract Disputes Act, is consistent with the view of the Comptroller General, *see Matter of Dep't of Agriculture—Request for Advance Decision,* 62 Comp.Gen. 203 (1983), and with a recent decision of the Court of Federal Claims, *Northeastern Pa. Shippers Co-op, Inc. v. United States,* 32 Fed.Cl. 72, 75 (1994). The Comptroller General's position on the matter is particularly telling, in light of the historical role of the General Accounting Office in administering Section 322 of the Transportation Act of 1940 and overseeing federal procurement activities generally. *See Iran Nat'l Airlines Corp. v. United States,* 360 F.2d at 643; *Rapides Regional Medical Ctr. v. Secretary, Dep't of Veterans' Affairs,* 974 F.2d 565, 571 n. 16 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2413, 124 L.Ed.2d 636 (1993); *see also Honeywell, Inc. v. United States,* 870 F.2d 644, 647 (Fed.Cir.1989).

Although our ruling is contrary to the position currently taken by the Armed Services Board of Contract Appeals, the Board's position on the issue has not been consistent. The Board's present position represents an about-face from the position it took on the same issue less than three years ago. *See Appeal of Stapp Towing Co.,* 92–2 B.C.A. (CCH) ¶ 24,862, at 124,020–21, 1992 WL 73336 (1992) (for transportation services provided under 49 U.S.C. § 10721, Section 3726 and the GSA transportation regulations govern the resolution of disputes; the Contract Disputes Act does not apply), *altered on reconsideration,* 92–2 B.C.A. (CCH) ¶ 25,190, 1992 WL 166826 (1992). While the Board's current position draws support from the

broad and unqualified language of the Contract Disputes Act, we believe that the Board's prior position struck a better accommodation between the Contract Disputes Act and Section 3726. As the Board explained in one of its previous opinions, the Contract Disputes Act

> did not contain any provisions purporting to change the manner in which [transportation] disputes were handled and we must assume that without the express revocation of the established statutory and regulatory historic scheme, Congress did not intend to change the process by injecting the Boards of Contract Appeals.

*Appeal of Burlington Air Express, Inc.,* 90–2 B.C.A. (CCH) ¶ 22,708, at 114,030, 1990 WL 19816 (1990), *vacated and remanded with directions to dismiss upon agreement of the parties,* No. 90–1373 (Fed.Cir. Aug. 1, 1991).

Practice in the industry also lends support to the view that the administrative review scheme created by Section 3726 and the pertinent transportation regulations has not been displaced by the Contract Disputes Act. Although contemporaneous practice is not dispositive, it is significant that the issue in these cases has reached this court for the first time 17 years after the enactment of the Contract Disputes Act and that, in the interim, carriers have routinely invoked the Section 3726 procedures in GBL-based transactions, rather than the Contract Disputes Act procedure that Sherwood seeks to invoke here. *See Appeal of Merchants Moving & Storage, Inc.,* 95–1 B.C.A. (CCH) ¶ 27,298, at 136,083, 1994 WL 651862 (1994) (GBL-based disputes "have traditionally been before [forums other than Boards of Contract Appeals]"); *Matter of Emery Worldwide,* 72 Comp.Gen. 77 (1993); *Matter of Sherwood Van Lines,* 67 Comp.Gen. 211 (1988).

The conventional practice is not surprising, as GBL-based transportation contracts of the sort at issue here differ significantly from the typical federal procurement contracts that are subject to the Contract Disputes Act. According to the Comptroller General, most GBL transactions by the Defense Department are "spot movements"—one-time arrangements for the movement of property from one location to another. *Matter of Fed-*

*eral Transport, Inc.—Request for Reconsideration,* 68 Comp.Gen. 451, 452 (1989). Whether the issue in dispute relates to overcharges or property loss, the claims arising from those simple transactions are usually small ones that are better suited to the informal administrative procedure of Section 3726 and the pertinent transportation regulations than to the more formal procedures of the Contract Disputes Act.

■ In recognition of the special status of such transactions within the federal procurement system, transportation services obtained by bills of lading are expressly exempted from the Federal Acquisition Regulation, which sets forth the regulatory mechanism associated with most government procurement contracts. *See* 48 C.F.R. §§ 47.000(a)(2), 47.200(b)(2); *see also* 48 C.F.R. § 201.103(b) (same exemption in Department of Defense FAR Supplement). "Spot movement" GBL-based procurements are also not subject to the Comptroller General's bid protest jurisdiction under the Competition in Contracting Act, 31 U.S.C. § 3552, *see Matter of Moody Bros. of Jacksonville, Inc.,* 69 Comp.Gen. 524, 525 (1990). Moreover, while a "contracting officer" is a central figure in the administrative claims review process established by the Contract Disputes Act, *see* 41 U.S.C. §§ 601(3), 605, 607(d), it is difficult to identify any individual who serves the role of "contracting officer" with respect to the simple, one-time transportation service obtained from a common carrier pursuant to a GBL. As this court stated in *Institut Pasteur v. United States,* 814 F.2d 624, 628 (Fed.Cir.1987), explaining why a different contract-based dispute was not subject to the Contract Disputes Act, the "application of complex, burdensome, and inevitably time-consuming procurement regulations" to transactions of the type involved in this case "would not do justice to the realities of the situation."

Finally, our analysis of the statutory scheme is consistent with the choice made by the parties. The GBL forms used in these cases, which are the standard GBL forms that have remained largely unchanged since 1977, each recited that the bill of lading would be "governed by" the regulations pub-

lished in 41 C.F.R. Part 101–41. Those regulations prescribe recourse to the two-tiered administrative dispute-resolution mechanism, not to the Contract Disputes Act. Having agreed to those procedures, Sherwood is in a poor position to claim that they are inapplicable here. *See Emerald Maintenance, Inc. v. United States,* 925 F.2d 1425, 1429 (Fed.Cir. 1991).

## IV

Sherwood argues that even if the Section 3726 procedures apply to setoffs for overcharges, they do not apply to setoffs based on loss and damage claims. Because Section 3726 is inapplicable to loss and damage setoffs, Sherwood contends, the disputes in these cases fall within the reach of the Contract Disputes Act.

■ It is true that Section 3726 does not expressly authorize setoffs for loss of or damage to shipped goods, and that administrative challenges to loss and damage setoffs are authorized by 31 U.S.C. §§ 3702 and 3711 rather than by Section 3726. *See* 4 C.F.R. § 30.1(b); 41 C.F.R. § 101–41.603–4; 32 C.F.R. Part 751; General Accounting Office, *Policies and Procedures Manual for Guidance of Federal Agencies* tit. IV, ch. 8 (loss and damages claims), tit. V, ch. 4 (overcharge claims). Nonetheless, it has long been recognized that the government may set off loss and damage claims, as well as overcharges, against the payments to carriers authorized by Section 3726. *See IML Freight, Inc. v. United States,* 639 F.2d 676, 678, 225 Ct.Cl. 393 (1980); *Burlington Northern, Inc. v. United States,* 462 F.2d 526, 529, 199 Ct.Cl. 143 (1972). Furthermore, both overcharges and loss and damage claims are treated as transportation claims under the GSA regulations when they involve "transportation within the purview of 31 U.S.C. 3726." 41 C.F.R. § 101–41.602(a). Loss and damage setoffs arising from GBL–based transactions are therefore subject to the special procedures defined by Section 3726 and the GSA and agency regulations. For that reason, loss and damage setoffs, like setoffs for overcharges, fall outside the reach of the Contract Disputes Act.

Sherwood also claims that the procedures of Section 3726 and the pertinent regulations did not work in these cases because the Navy failed to act on its requests for refunds of the damage setoffs. Sherwood contends that it sought review in the Board of Contract Appeals on the theory that the Navy's failure to act on its claims could be deemed a denial of those claims, *see* 41 U.S.C. § 605(c)(5), but that it had no equivalent means of seeking review under Section 3726 and the pertinent regulations.

■ We do not see why that should be so. As we have noted, a carrier may seek judicial review of its claims in the Court of Federal Claims or a district court without exhausting its administrative remedies. In addition, the government conceded at oral argument that a carrier may seek review by the Comptroller General if an agency fails to act on the carrier's claims within a reasonable time. While the GSA regulations by their terms require final agency action before an appeal can be taken to the Comptroller General, 41 C.F.R. §§ 101–41.604–2(a), 101–41.701; *see also* 32 C.F.R. § 751.34, an agency may not use the requirement of finality to hold a carrier hostage by failing to act within a reasonable time on the carrier's request for payment. *See Greyhound Van Lines, Inc.,* 46 Comp.Gen. 436, 437 (1966) (in case of potentially prejudicial agency delay in paying carrier's claim, carrier can seek administrative review prior to final agency action). The Navy's alleged frustration of the administrative review process is therefore not a sufficient reason to find the Contract Disputes Act applicable where it otherwise would not be.

## V

Our decision is a narrow one, limited to cases in which the government obtains transportation services from a common carrier pursuant to 49 U.S.C. § 10721 and in which the GBL constitutes the contract between the parties. We do not address cases in which transportation services are obtained through other means, such as contracts for continuing transportation services over a period of time. *See, e.g., A–Transport Northwest Co. v. United States,* 36 F.3d 1576 (Fed.

Cir.1994) (tender agreement for transportation services over a 24–month period constituted the contract between the parties); *Matter of Federal Transport, Inc.—Request for Reconsideration,* 68 Comp.Gen. at 452 (selection of a carrier under guaranteed traffic program created a requirements contract with carrier). In cases of that kind, the GBL does not constitute the contract between the carrier and the government agency, but is simply the means by which the agency exercises its right to procure services under a binding, long-term contract. A different analysis may be appropriate with regard to contract-based claims arising in that setting.

The seven appeals before us have been presented as involving simple transactions in which transportation services are obtained pursuant to a GBL that constitutes the contract between the common carrier and the government. With respect to transactions of that sort, we are not persuaded that the Contract Disputes Act was intended to displace the specific, well-established procedures of Section 3726 and the pertinent GSA and agency regulations. We therefore vacate the orders of the Board of Contract Appeals and remand these cases to the Board with instructions to dismiss the appeals for lack of jurisdiction.

*VACATED AND REMANDED.*